**Velnita DUNHAM, Plaintiff,**

v.

**HOTELERA CANCO S.A. de C.V., et al., Defendants.**

**Civil Action No. 2:95cv522.**

United States District Court,
E.D. Virginia,
Norfolk Division.

July 23, 1996.

Andrew M. Sacks, Sacks & Sacks, Norfolk, VA, for Plaintiff.

Brian V. Otero, Hunton & Williams, Richmond, VA, for defendant Holiday Inns, Inc.

Julie A. Quagliano, Lyon and McManus, Washington, DC, for defendants American Express Company and American Express Travel Related Services Company, Inc.

Jeremiah A. Denton, III, Harlan, Denton & Flora, P.C., Norfolk, VA, for defendant American Airlines, Inc.

## DISMISSAL ORDER

DOUMAR, District Judge.

On June 25, 1996, United States Magistrate Judge William T. Prince filed a Magistrate Judge's Report & Recommendation addressing multiple defendants' motions for summary judgment on the grounds of lack of admiralty jurisdiction, federal question jurisdiction, and improper venue in diversity jurisdiction. The Report & Recommendation recommends that summary judgment and/or dismissal be granted to all defendants or

alternatively, that the action be dismissed on forum non conveniens grounds. All parties were notified that "failure to file timely objections to the recommendation ... will result in waiver of right to appeal from a judgment of this court based on such recommendation." No party has filed any objections to the Magistrate Judge's Report & Recommendation since it was filed on June 25, 1996.

Therefore, pursuant to 28 U.S.C. § 636(b), Fed.R.Civ.P. 72(b), and *Carr v. Hutto,* 737 F.2d 433, 434 (4th Cir.1984), the Court ADOPTS IN FULL the findings of fact and conclusions of law in the Magistrate Judge's Report & Recommendation. It is therefore hereby ORDERED that plaintiff's action be DISMISSED for lack of admiralty and federal question jurisdiction, and for improper venue under 28 U.S.C. § 1391(a).

The Clerk is DIRECTED to forward a copy of this order to counsel for both parties.

IT IS SO ORDERED.

## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

PRINCE, United States Magistrate Judge.

On November 28, 1995, Magistrate Judge William T. Prince was designated pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b) to conduct hearings on defendant's motion to dismiss and submit to a United States District Judge proposed findings of fact and recommendations for the disposition of the Motion. A hearing was held on November 28, 1995, at which Andrew M. Sacks, Esquire, appeared for the plaintiff; Brian V. Otero, Esquire, appeared for defendant Holiday Inns, Inc. (hereinafter referred to as "Holiday Inns"); Julie A. Quagliano, Esquire, appeared for defendant American Express Company ("AMEX"), and American Express Travel Related Services Company, Inc. ("AMEX–Travel"); and Jeremiah A. Denton, Esquire, appeared on behalf of defendant American Airlines, Inc. ("American Airlines"). The proceedings were reported by Sharon Borden, Official Court Reporter.

## STATEMENT OF THE CASE

This action arose out of a snorkeling accident that occurred off the coast of Mexico. On May 27, 1993, the plaintiff, Velnita Dunham, and several companions left from Washington, D.C. on a trip to Cancun, Mexico. The trip was part of a vacation package that the plaintiff purchased from several of the various defendants in this case. Upon her arrival in Cancun, plaintiff alleges that she was met by one Julio Carrillo, a representative of defendants American, AMEX, AMEX–Travel, and American Express Company (Mexico), S.A. De C.V. (hereinafter "AMEX–Mexico") at the resort premises of defendants Crown Princess, Holiday and Holiday Crown. At that time, it was arranged for the plaintiff to participate in activities to be sponsored and supervised by yet two more defendants, Marina Punta del Este S.A. de C.V., and Tropical Jungle Tour. The activities were to include marine transportation to the Nizuc Reef area of Cancun and snorkeling on the reef. On May 29, plaintiff joined a group of roughly 30 other people for the trip, and was "directed to a vessel in which she was paired with another tourist for the purpose of operating the vessel for a voyage of 30 minutes ... to the Nizuc Reef destination." *See* Amended Complaint at ¶ 22. During the snorkeling part of the tour, plaintiff incurred injuries for which she required emergency medical care in Mexico and Florida due to the ingestion of water.

Plaintiff filed this suit on May 26, 1995, alleging several claims against all of the defendants, including breach of contract, breach of warranty, and negligence. The grounds for jurisdiction that were cited in the complaint were federal question and diversity jurisdiction, 28 U.S.C. §§ 1331 & 1332. Plaintiff also alleged in Count VIII of the Complaint a claim for damages under the maritime law, although the federal admiralty jurisdiction statute, 28 U.S.C. § 1333, was not cited. However, based upon her representations to the Court via counsel, plaintiff was not able to serve defendants Hotelera Canco S.A. de C.V., Holiday Inn Crowne Plaza, AMEX–Mexico, Marina Punta del Este S.A. de C.V., Ing. Fernando Ortega, Sr., Pablo Fadol, and Tropical Jungle Tour. Each of these defendants has yet to appear.

Defendant Holiday Inns filed a Motion to Dismiss on September 1, 1995, arguing that 1) the suit does not fall within the reach of federal admiralty jurisdiction; 2) venue is not proper in this district; and 3) the suit should be dismissed under the doctrine of forum non conveniens. Defendant Holiday Inn's Motion to Dismiss of September 1, 1995 at 2. Plaintiff and Defendant each filed several subsequent additional briefs addressing these issues. The motion was heard by the undersigned Magistrate Judge on November 28, 1995. On December 12, 1995, the Court requested plaintiff to either amend her pleadings or file an affidavit in order to establish the existence of admiralty jurisdiction, and to designate the action pursuant to Rule 9(h) of the Federal Rules of Civil Procedure as either an admiralty or non-admiralty claim. *See* Order dated December 12, 1995. After requesting an enlargement of time to file an amended complaint which was granted by the Court, plaintiff responded to that order on January 10, 1996, by filing an amended complaint. In the Amended Complaint, plaintiff included a claim for damages under the Jones Act, 46 U.S.C. § 688. Plaintiff also replead her claim under admiralty law with more specificity, and designated it as an admiralty claim pursuant to Federal Rule of Civil Procedure 9(h). *See* Amended Complaint at 21, ¶ 70.

Defendant Holiday Inn subsequently filed another Motion to Dismiss on January 16, 1996. Plaintiff's motion for an enlargement of time in which to respond to defendant's Motion was granted, but no responsive briefs were filed. On February 14, 1996, the Court issued an Order directing the parties to engage in discovery concerning the factual basis underlying personal jurisdiction over the defendants in this district as well as discovery concerning the operation of the doctrine of forum non conveniens in this case. On April 25, at the request of all the parties, the Court issued another Order extending the discovery period and directing any defendant contesting the Court's exercise of personal jurisdiction over any defendant or moving for dismissal on the ground of forum non conveniens to file a memorandum of law and supporting evidence by May 20, 1996. The plaintiff was directed to respond in a similar fashion within ten days. On May 21, 1996, Defendants AMEX and AMEX–Travel joined Defendant Holiday Inn's Motion to Dismiss of January 16, 1996, and submitted a memorandum to the Court urging dismissal on the grounds of improper venue and forum non conveniens. Plaintiff has yet to respond. The Court will now address those motions.

## ANALYSIS

### I. MOTION FOR SUMMARY JUDGMENT

Because the defendants have relied on evidence outside the scope of the pleadings, the Court construes their motions as one for summary judgment. *See* Fed.R.Civ.P. 12(b)(6) (motion to dismiss supported by matters outside the pleadings shall be treated as a motion for summary judgment under Rule 56). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Facts are deemed material if they might affect the outcome of the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party's submission must foreclose the possibility of the existence of facts from which a jury could make inferences favorable to the non-movant. *Id.*

In deciding a summary judgment motion, the court must view the record as a whole and in the light most favorable to the non-moving party. *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 610 (4th Cir.1985). Either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits" to support or rebut a summary judgment motion. Fed.R.Civ.P. 56(c). Supporting and opposing affidavits must be based on personal knowledge and must set forth facts that would be

admissible in evidence. *Id.* at 56(e). Furthermore, the party moving for summary judgment need not supply "affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

## II. ADMIRALTY JURISDICTION

 Plaintiff asserts that admiralty jurisdiction exists for the cause of action stated in Count VIII of her complaint. Complaint at ¶ 1(b). "A party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* — U.S. ——, ——, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995). In this case, plaintiff fails to show that the location of her accident was within the boundaries of federal admiralty jurisdiction. The Nizuc Reef, in particular the area in which plaintiff was injured, is admitted by the plaintiff to be within the territorial waters of Mexico. *See* Amended Complaint at ¶ 70. Federal maritime jurisdiction applies to the navigable waters of the United States and the "high seas", but does not extend into the territorial waters of other nations. *See Victory Carriers, Inc. v. Law,* 404 U.S. 202, 205, 92 S.Ct. 418, 421–22, 30 L.Ed.2d 383 (1971) (maritime law governs only those torts occurring on the navigable waters of the United States); *Sharma v. Skaarup Ship Management Corp.,* 699 F.Supp. 440, 448 (S.D.N.Y.1988) (No admiralty jurisdiction exists for tort which allegedly occurred in Vancouver, British Columbia, outside the navigable waters of the United States), *aff'd* 916 F.2d 820 (1990), *cert. denied,* 499 U.S. 907, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991). There is therefore no admiralty jurisdiction for plaintiff's claim, and the defendants are entitled to judgment on this claim as a matter of law. It is therefore RECOMMENDED that the defendants' Motion for Summary Judgment be GRANTED as to this claim.

## III. FEDERAL QUESTION JURISDICTION

### UNDER 46 U.S.C. 688 (JONES ACT)

 In Count IX of her amended complaint plaintiff brings a claim for damages under 46 U.S.C. § 688, more commonly known as the Jones Act. The Jones Act creates a federal cause of action for "[a]ny seaman who shall suffer personal injury in the course of his employment." 46 U.S.C. § 688(a). *See Chandris, Inc. v. Latsis,* — U.S. ——, ——, 115 S.Ct. 2172, 2183, 132 L.Ed.2d 314 (1995). It is apparent from the plain language of the statute that a Jones Act claimant must: 1) be a "seaman" as defined by the Act, and 2) have been injured in the course of "employment." *See Complaint of Falkiner,* 716 F.Supp. 895, 902 (E.D.Va. 1988). Both of these elements must be satisfied in order for a claim to be brought under the act.

The Court will address the element regarding employment first. The existence of an employer-employee relationship between the plaintiff and the defendants is determined by common-law standards. *Id.* at 902. Under the common law, four factors are considered in determining whether such a relationship exists: 1) the selection and engagement of the putative employee, 2) whether wages are paid, 3) the power of dismissal, and 4) the power of control over the one alleged to be an employee. *Id.* (Citing 53 Am.Jur.2d, Master and Servant, section 2 at 82 (1970)). Payment of wages is the least important of these factors, and control is the most important. *Falkiner,* 716 F.Supp. at 902.

The court in *Falkiner* considered a case which is similar in many ways to the one at bar. The plaintiffs in *Falkiner* were the owners of a private yacht, the WAN FU. The plaintiffs initiated the action pursuant to the Limitation of Liability Act of 1851, 46 U.S.C.App. sections 182–183, seeking exoneration from liability arising from an accident on board the yacht in 1987. *Id.* at 898. The claimants in *Falkiner* were two "cannoneers" and a friend who came aboard a private yacht for the purpose of participating in a mock pirate battle staged during the 1987 Norfolk Harborfest. They were injured when a flash fire occurred on the yacht during the battle. Each claimant argued that they were "seamen" under the definition of

the Jones Act, and that the owners of the yacht therefore owed them a duty of seaworthiness. *Id.*

Applying the four factors enumerated above, the Court, Judge Doumar presiding, determined that the claimants were not "seamen" under the Jones Act, and that the ship's owners therefore did not owe them a warranty of the vessel's seaworthiness. *Id.* at 900. The court noted that neither of the cannoneers had been selected by the owners of the vessel to participate in the event, but rather had been directed to do so by an organizer. *Id.* at 903. The cannoneers and the other guest were not compensated for their efforts, but chose to participate for "their own amusement." *Id.* Most importantly, the court found that the owners of the vessel exercised no control over the actions of the cannoneers, even though the plaintiff directed the placement of the cannons on the deck and gave the order to commence firing. *Id.*

Likewise, the factors cited by the *Falkiner* court weigh against bestowing seaman status on the plaintiff. First, the plaintiff was not selected by the defendants as an employee. On the contrary, it was she who selected them. The analysis of the *Falkiner* court with regard to the third claimant, Mary Hall, is instructive on the employment issue. Hall was a co-worker of one of the cannoneers who expressed an interest in being on the vessel during the battle, and was allowed to come on board. *Id.* at 899. In a footnote, the court addressed Hall's status as an employee:

> By no stretch of the imagination could claimant Hall be considered the plaintiff's employee during the pirate battle. Hall was aboard the WAN FU as a social guest at her own request and Mr. Falkiner had actual knowledge that she was not aboard as a cannoneer. As a spectator she held cannon fuses for Owen, but this limited involvement in the cannon firing did not make her an employee of the Falkiners. Claimant Hall was a social guest.

*Id.* at 903 n. 7. Ms. Hall, like the plaintiff in the case now at bar, was a social guest

aboard a vessel at her own request. Plaintiff Dunham was on board the Mexican tour speedboat not only at her own request, but because she had paid for the opportunity to do so. Amended Complaint at ¶ 17. Upon review of the record, it is the judgment of this Court that the plaintiff was not selected by the defendants as an employee, and is more properly characterized as a social guest than an employee. Accordingly, this factor weighs against the characterization of Dunham as an employee.

Second, no wages were paid by the defendants to the plaintiff. The whole purpose of the "Tropical Jungle Tour" was commercial in nature; plaintiff neither expected nor received any compensation for her operation of the speedboat. In fact, plaintiff paid the defendants for the right to operate the speedboat, and the fact that the tour would enable her to pilot the vessel was just one of the tour's many attractions. The Court therefore finds that the absence of wages paid to the plaintiff, although not dispositive, also weighs against her status as an employee. *See Falkiner,* 716 F.Supp. at 902.

The evidence relating to the third factor, the power of the employer to dismiss the putative employee, is unclear. More specifically, there is no evidence whatsoever before the Court pertaining to the existence of such a right. It is conceivable that a disorderly and disruptive operator might be restricted from operating a tour craft, and therefore the Court resolves this factor in favor of the plaintiff. *See Terry's Floor Fashions, Inc., supra,* at 610 (when deciding motion for summary judgment, court must view record in the light most favorable to the non-moving party).

The final and most important factor, the power of control over the alleged employee, must be resolved in favor of the defendants. One of the lures of the Tropical Jungle Tour, as stated above, was the fact that the plaintiff would be able to operate her own speedboat en route to the snorkeling location. As a result, the degree of control that could be exercised by the defendants over her actions was necessarily limited.[1] Although it may be

---

1. The Court notes that the plaintiff alleges

throughout her complaint that the defendants

assumed that the defendant was able to exercise some degree of control over the plaintiff's piloting of her vessel, it is the determination of this Court that it did not amount to a sufficient degree of control to cause her to be an employee. Alternatively, and on a more basic level, it is also the opinion of this Court that plaintiff performed no "work" that the defendants could exercise control over. Although the plaintiff piloted the speedboat en route to the snorkeling site, this activity was contracted for and performed by the plaintiff as a recreational activity. In this sense, plaintiff resembles the cannoneers in *Falkiner,* who were characterized by that court as "participants in their own amusement." *Id.* at 903. Therefore, the element of control also weighs against a determination that the plaintiff was employed by the defendants.

Upon reviewing the relevant factors, it appears that three factors, including the most important one, do not support granting the plaintiff status as an employee. It is therefore the determination of this Court that the plaintiff was not an employee of the defendants, and therefore could not have been "injured in the course of his (her) employment" as required by the Jones Act. *See* 46 U.S.C. § 688(a).

Although the plaintiff has failed the first requirement for bringing a claim under the Jones Act, the Court will address the second requirement, that the claimant be a "seaman," as well. The test for "seaman" status was recently articulated by the Supreme Court of the United States in *Chandris, Inc. v. Latsis,* —— U.S. ——, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). The plaintiff in *Chandris* appealed a jury verdict against him that was based solely on a determination that he was not a "seaman" under the Jones Act. The Court of Appeals for the Second Circuit vacated the judgment, and the Supreme Court granted certiorari in order "to resolve the continuing conflict among the Courts of Appeals regarding the appropriate requirements for seaman status under the Jones Act." *Id.,* at ——, 115 S.Ct. at 2182.

The *Chandris* Court outlined the two essential requirements for seaman status. First, "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.' ... But this threshold requirement is very broad: '[a]ll who work at sea in the service of a ship' are *eligible* for seaman status." *Id.* at ——, 115 S.Ct. at 2190 (*quoting McDermott International, Inc. v. Wilander,* 498 U.S. 337, 355, 111 S.Ct. 807, 817–18, 112 L.Ed.2d 866 (1991)). Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Chandris,* at ——, 115 S.Ct. at 2190. The Court went on to explain the purpose behind the second requirement by stating:

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

*Id.* The Court focused on the second requirement in *Chandris.* The plaintiff in *Chandris* urged the Court to "conclude that anyone working on board a vessel for the duration of a 'voyage' in furtherance of the vessel's mission has the necessary employment-related connection to qualify as a seaman." *Id.* at ——–——, 115 S.Ct. at 2184–85. The Court rejected this approach and instead continued the development of a "status based standard." *Id.* "In evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ a 'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence." *Id.,* at ——, 115 S.Ct. at 2187

---

failed to assert enough control and supervision over her during the tour to render it safe. *See* Amended Complaint at ¶¶ 23, 30, 37. Although simultaneous findings that the tour was negli-

gently supervised and that the defendants exercised enough control over the plaintiff for her to be considered an employee are not logically irreconcilable, they are nevertheless problematic.

(*quoting Easley v. Southern Shipbuilding Corp.*, 965 F.2d 1, 5 (5th Cir.1992), *cert. denied*, 506 U.S. 1050, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993)). *Chandris*, therefore, clearly articulated that for seaman status to be conferred there must be a "substantial" employment relationship with regard to both the duration and nature of the relation, and that such determination must necessarily include a temporal requirement. *Chandris, supra*, at ——, 115 S.Ct. at 2191.

Upon review of the record, it appears that plaintiff Dunham is not a "seaman" as contemplated by the *Chandris* Court. First, it must be noted that the requirements for seaman status under the Jones Act are inextricably intertwined with the existence of an employment relationship. As stated earlier, no such relationship exists here. Assuming, *arguendo*, that such a relationship did exist, it is still clear that the plaintiff is not a "seaman." The second requirement for seaman status is fulfilled only when there is a "substantial" connection, in duration and nature, to a vessel in navigation. *Id.* Whether or not the connection is substantial is not to be determined by examining the brief period of time surrounding the accident, but by examining the complete relation of the claimant to the vessel. *Id.* Examining the facts of the case at bar, it appears that Ms. Dunham had no connection whatsoever with the vessel before or after the brief period during which her accident occurred. The duration of her connection with the vessel is therefore unsubstantial. The *Chandris* Court went so far as to note that the Fifth Circuit, which has a well-developed body of caselaw concerning the Jones Act, currently declines "to find seaman status where the employee spent less than 30 percent of his time aboard ship." *See id.*, at ——, 115 S.Ct. at 2189; *Barrett v. Chevron, U.S.A. Inc.*, 781 F.2d 1067, 1076 (5th Cir.1986) (en banc) (holding that plaintiff who performed no more than twenty to thirty percent of his work aboard vessels was not "seaman" under Jones Act). The nature of Ms. Dunham's connection to the vessel is somewhat more substantial, but not decisively so. The fact that Dunham arguably performed the duties of a seaman in piloting the vessel is not sufficient to confer seaman status upon her. *See Director, OWCP v. Perini*

*North River Associates*, 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983) (holding that injured worker was covered by Longshoremen's and Harbor Worker's Act, not Jones Act, even though he was working on a barge in navigable waters); *Parker v. Motor Boat Sales, Inc.*, 314 U.S. 244, 244–245, 62 S.Ct. 221, 221–222, 86 L.Ed. 184 (1941) (holding that worker drowned while testing outboard motor on boat was covered by Longshoremen's and Harbor Worker's Act). Accordingly, Plaintiff fails to qualify as a seaman under the Jones Act, and thus fails the second requirement for bringing a successful claim under the Act. *See* 46 U.S.C. § 688(a). It is the RECOMMENDATION of this Court, therefore, that defendants' Motion for Summary Judgment on this claim also be GRANTED.

## IV. DIVERSITY JURISDICTION

Due to the absence of both federal question jurisdiction under § 1331 and federal admiralty jurisdiction under § 1333, the grounds of jurisdiction for plaintiff's suit are narrowed to diversity jurisdiction under § 1332. The requirements of diversity of citizenship and amount in controversy are each clearly satisfied by plaintiff's claim. However, plaintiff is also subject to the venue provisions of 28 U.S.C. § 1391(a), and bears the burden to establish that venue is appropriate in this district. *Hodson v. A.H. Robins Co., Inc.*, 528 F.Supp. 809, 812 (E.D.Va.1981), *aff'd* 715 F.2d 142 (4th Cir. 1983); *Bartholomew v. Virginia Chiropractors Association, Inc.*, 612 F.2d 812 (4th Cir. 1979) *cert. denied*, 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980); 15 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure, § 3826 (1976 & 1978 Supp.). Section 1391(a) relates to actions based solely on diversity jurisdiction, and provides:

A civil action wherein jurisdiction is founded only upon diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or admissions giving rise to the

claim occurred, or substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.

28 U.S.C. § 1391(a). It is clear that subparagraph (1) of this section is inapplicable because the various defendants do not all reside in the same state. · Subparagraph (2) is similarly inapplicable because there is no allegation that any property that is the subject of this action is present, or that any of the events giving rise to the claim occurred in this district.

Subparagraph (3) of § 1391 allows venue in a district where "the defendants are subject to personal jurisdiction at the time the action is commenced."[2] 28 U.S.C.

§ 1391(a)(3). Defendants assert in their Motion for Summary Judgment that not all of the defendants are subject to personal jurisdiction in the Eastern District of Virginia,· as required by § 1391(a)(3).

A federal district court sitting in diversity derives personal jurisdiction based on the long-arm statute of the state in which it sits. *See Barry v. Whalen,* 796 F.Supp. 885 (E.D.Va.1992). The statute which controls here, therefore, is the Virginia long-arm statute contained in Va.Code . § 8.01–328.1(A).[3] The burden of establishing· personal jurisdiction by a preponderance of the evidence rests on the plaintiff once its existence has been questioned. *Mylan Laboratories, Inc., v. Akzo, N.V.,* 2 .F.3d 56, 59–60 (4th Cir.1993). . *See. Lomah Electronic Targe-*

**2.** Because this action was filed on May 26, 1995, the October 3, 1995 amendments to § 1391 do not apply. The amendment substituted the phrase "any defendant is" for "the defendants are" in order to clarify that Subsection (a)(3) applied in cases with single, as well as multiple, defendants.

**3.** § 8.01–328.1. of the Virginia Code is the Virginia "long-arm" statute, and provides:

When personal jurisdiction over person may be exercised.—

—A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or things in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when he might reasonably have expected such person to use, consume, or be affected by the goods in this Commonwealth, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth;

6. Having an interest in, using, or possessing real property in this Commonwealth;

7. Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting;

8. Having (i) executed an agreement in this Commonwealth which obligates the person to pay spousal support or child support to a domiciliary of this Commonwealth or to a person who has satisfied the residency requirements in suits for annulments or divorce for members of the armed forces pursuant to § 20–97 provided proof of service of process on a nonresident party is made by a law-enforcement officer or other person authorized to serve process in the jurisdiction where the nonresident party is located, (ii) been ordered to pay spousal support or child support pursuant to an order entered by any court of competent jurisdiction in this Commonwealth having in personam jurisdiction over such person, or (iii) shown by personal conduct in this Commonwealth, as alleged by affidavit, that the person conceived or fathered a child in this Commonwealth; or

9. Having maintained within this Commonwealth a matrimonial domicile at the time of separation of the parties upon which grounds for divorce or separate maintenance is based, or at the time ·a cause of action arose for divorce or separate maintenance or at the time of commencement of such suit, if the other party to the matrimonial relationship resides herein.

Jurisdiction in subdivision 9 of this subsection is valid only upon proof of service of process pursuant to § 8.01–296 on the nonresident party by a person authorized under the provisions of § 8.01–320. Jurisdiction under subdivision 8(iii) of this subsection is valid only upon proof of personal service on a nonresident pursuant to § 8.01–320.

*try, Inc. v. ATA Training Aids,* 828 F.2d 1021, 1023 (4th Cir.1987); *Peitsch v. Regency Cruises, Inc.,* 664 F.Supp. 362, 363 (N.D.Ill. 1987) (failure of plaintiff to sufficiently plead contact of defendant with forum resulted in dismissal of claim for tort occurring on cruise ship). In order to fulfill this burden, the plaintiff must prove two things. First, she must prove that the statutory language of the long-arm statute permits service of process under the particular facts and circumstances on a non-resident defendant, and then she must prove that the exercise of personal jurisdiction does not violate the Due Process Clause of the United States Constitution. *Luke v. Dalow Indus., Inc.,* 566 F.Supp. 1470, 1471 (E.D.Va.1983). To satisfy constitutional due process a defendant must have certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. State of Washington, et al.,* 326 U.S. 310, 315, 66 S.Ct. 154, 157–58, 90 L.Ed. 95 (1945).

In order to ensure that facts supporting venue in this district pursuant to § 1391(a) were adequately discovered, this Court directed the parties to engage in discovery on this issue on February 14, 1996. That Order was amended on April 25, 1996 pursuant to a joint motion of the parties to extend the discovery period. The amended Order directed that "any defendant contesting personal jurisdiction over any defendant shall file a memorandum of law and supporting affidavits or other evidence in support of its contention that the Court does not have personal jurisdiction over all the defendants." Plaintiff was to have ten days to respond to such a memorandum. Defendants AMEX and AMEX Travel joined and filed a memorandum of law in support of Defendant Holiday Inn's previous Motion to Dismiss on May 21, 1996.

Defendant AMEX stated in its memorandum that it served several discovery requests upon the plaintiff to determine the factual basis for the exercise of jurisdiction over several of the defendants in this case which appear to be residents or corporate domiciliaries of Mexico.[4] Corresponding with the schedule set out in the Court's Order, the discovery requests were served on February 29, 1996, and Plaintiff's responses were due on March 18, 1996. Plaintiff failed to respond to these requests, despite several documented attempts by the defendants to communicate with plaintiff's counsel. *See* Defendant's Exhibit B. The Court also notes that plaintiff has failed to respond to the memorandum of law filed by defendant AMEX within the time period specified by the Court.

Under Rule 37(b) of the Federal Rules of Civil Procedure, a court is authorized to appropriately deal with parties that have disobeyed discovery orders. *See* Fed.R.Civ.P. 37(b); *Chilcutt v. U.S.,* 4 F.3d 1313, 1319–20 (5th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 460, 130 L.Ed.2d 367 (1994). Although there is a wide variety of remedies for this situation available to the Court, the one best tailored to reach a just result is to impose no sanction at all. Instead, plaintiff will have to discharge her burden to establish facts supporting venue in this district without the evidence that the Court's order gave it the opportunity to discover. The Court does, however, look upon plaintiff's failure to provide any response at all to discovery requests on the issue of personal jurisdiction with some suspicion. "When parties present no valid objections to discovery and intentionally withhold properly requested information, courts have the authority to presume that the party's refusal to produce the information is 'an admission of the want of merit in the asserted (claim).'" *Chilcutt v. U.S.,* 4 F.3d 1313, 1324 (5th Cir.1993) (citing *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 351, 29 S.Ct. 370, 380, 53 L.Ed. 530 (1909)).

■ Turning to the Virginia long-arm statute which provides personal jurisdiction over a defendant in this diversity suit, the provision that seems most applicable to the foreign defendants named in the suit is § 8.01–328.1(A)(1). That section provides for

---

4. These defendants include Hotelera Canco S.A. de C.V., Holiday Inn Crowne Plaza, AMEX–Mexico, Marina Punta del Este S.A. de C.V., Ing. Fernando Ortega, Sr., Pablo Fadol, and Tropical Jungle Tour.

the exercise of personal jurisdiction over a defendant "as to a cause of action arising from the person's: (1) Transacting any business in this Commonwealth." Va.Code § 8.01–328.1(A)(1). The scope of the transacting business requirement is limited only by the boundaries of due process. *Bassett Furn. Indus., Inc. v. Sexton,* 596 F.Supp. 454, 456 (W.D.Va.1984). A single act of business will suffice if the action arises from that same transaction. *Unidyne Corp. v. Aerolineas Argentinas,* 590 F.Supp. 391, 396 (E.D.Va.1984). The phrase "arising from" requires that there be a causal link between the acts relied on for personal jurisdiction and the cause of action asserted. *Chedid v. Boardwalk Regency Corp.,* 756 F.Supp. 941, 943 (E.D.Va.1991). The causal link requires more than simple "but-for" causation; it requires something akin to legal or proximate causation. *Id.* The complaint lacks any allegations that would support the exercise of jurisdiction over these defendants under any of the other sections of the Virginia long-arm statute, and therefore this Court will not address those sections.

■ The plaintiff seeks to establish jurisdiction by pleading in paragraph 15 of her amended complaint that: "[t]he defendants, ... either reside in, or transact substantial business within this jurisdictional district either directly or through agents, servants and other authorized representatives." Amended Complaint at 6. Plaintiff had the opportunity to discover evidence supporting its contention, such as advertisements directed by the various defendants towards this area, or business records reflecting "substantial business" conducted in this district, but instead chose not to do so. Aside from the allegations in the Amended Complaint, the plaintiff has not indicated the factual basis for this Court to exercise jurisdiction over the defendants which appear to reside in Mexico. These allegations do not discharge plaintiff's burden on a motion for summary judgment where there has been ample opportunity for discovery. Therefore, due to the utter lack of evidence supporting venue in this district, it is RECOMMENDED that defendants' Motion for Summary Judgment on the ground of lack of venue be GRANTED.

## V. FORUM NON CONVENIENS

■ Defendant Holiday Inns, Inc., has also requested this Court to decline jurisdiction under the doctrine of forum non conveniens. The doctrine of forum non conveniens allows a court to decline jurisdiction if the forum is an inconvenient one for the action. *Hodson v. A.H. Robins Co., Inc.,* 528 F.Supp. 809, 817 (E.D.Va.1981), *aff'd* 715 F.2d 142 (4th Cir.1983). If a more convenient federal forum is available, then the action may be transferred under 28 U.S.C. § 1406(a). If the alternative forum is a court of a foreign country, as it is here, the court may dismiss the action. *Id.* at 816.

The doctrine of forum non conveniens was addressed by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and the Court set out public and private interest factors to be considered in determining whether application of the doctrine is appropriate. Among the private interest factors recited by the *Gulf Oil* Court are:

> Relative ease of access of sources of proof; availability of compulsory process for attendance of unwilling witnesses; the possibility of view of premises, if view would be appropriate to the action; and all of the practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil, supra,* at 508, 67 S.Ct. at 843. The public factors set forth in that decision include the local interest in having controversies decided "at home"; the interest in having the trial of a diversity case in a forum that is familiar with the law that governs the action; and the avoidance of unnecessary problems and conflicts of law, upon the application of foreign laws. *Gulf Oil, supra,* at 509, 67 S.Ct. at 843.

The application of the factors set out in *Gulf Oil* varies between cases, and the final outcome is "heavily dependent on the unique facts of particular cases." *Hodson, supra,* at 819 (*citing* 15 Wright, Miller, and Cooper, Federal Practice and Procedure, § 3828 (1976)). The Court must carefully weigh all the factors, and dismiss only if the balance is "strongly in favor of the defendant", in order

to protect the plaintiff's choice of forum. *Gulf Oil, supra*, at 508, 67 S.Ct. at 843.

The factors articulated in *Gulf Oil* all weigh heavily in favor of dismissing this case. Among the "private interest" factors, it is clear that access to proof will be exceedingly restricted in this district. It is reasonable to anticipate that a trial court in this district would find it difficult to gather evidence pertaining to liability, because the bulk of the evidence regarding the incident at the Nizuc Reef will be found exclusively in Mexico. The plaintiff learned of the "Tropical Jungle Tour" on which she was injured through the hospitality desk at her Cancun hotel, and also booked and paid for the trip while in Mexico. *See* Defendants' Ex. D, Wooden deposition 20–22. The Tropical Jungle Tour was provided by Defendant Marina Punta del Este S.A. de C.V., a marina located in Mexico. The owners of the Marina, defendants Otega and Fadol, are Mexican, as were the guides from the marina who accompanied the plaintiff on the tour. *See id.*, at pp. 84–85, lines 21–9. The Court also notes that because Dunham was treated by Mexican doctors, at least some of the evidence pertaining to her damages will originate from Mexico. *See* Amended Complaint at ¶ 25.

Furthermore, it is not clear that any of the primary witnesses in this case, save the plaintiff herself, reside in this district. It is doubtful that the plaintiff will testify at a trial. Ms. Dunham has experienced significant memory loss, and has absolutely no recollection of her activities in Cancun. *See* Defendants' Ex. C, Dunham Deposition pp. 22–23, lines 23–6 and p. 25, lines 8–18; Defendants' Ex. D, Wooden Deposition p. 59, lines 11–21. It is therefore unlikely that she will be able to testify to matters beyond the extent of her own injuries.

Of plaintiff's three traveling companions, only two, Kimberly Wooden and Sandra Epps, went on the Jungle Tour with her. The other companion, Carolyn Bonnick, did not participate in the Jungle Tour because she was still upset over a drowning that she had witnessed that morning. *See* Defendants' Ex. D, Wooden Deposition p. 22, lines 14–24. Moreover, it appears from the evidence that none of plaintiff's traveling companions witnessed the accident. *See id.*, pp. 26–27, 30–32, and 42, lines 19–21. Plaintiff was assigned to be partnered with a stranger to her, and was placed in a tour group separate from Epps and Wooden. *See id.*, pp. 27, 30–32. None of plaintiff's companions witnessed the accident or heard the instructions given to the plaintiff from her guides, and consequently they will not be able to testify to these matters at trial. It therefore appears that most of the primary witnesses in this case are located in Mexico. These witnesses include the operators of the hotel hospitality desk, the owners of the marina, the tour guides who accompanied the plaintiff, and the doctors at the hospital where the plaintiff was treated. The private interest factor concerning the ease of access to proof is therefore resolved in favor of dismissal.

The facts related above lead into the next private interest factor outlined by the *Gulf Oil* Court, the availability of process to compel the attendance of unwilling witnesses. *Gulf Oil, supra*, at 508, 67 S.Ct. at 843. Because most of the witnesses to this matter reside in Mexico, there is no mechanism by which this Court could provide compulsory process for the attendance of witnesses. As of this date, the plaintiff has not even been able to serve the Mexican defendants with process, and it is likely that most of the witnesses lie beyond the subpoena power of this Court. This fact is not of itself dispositive, because regardless of where a trial is held, it is almost inevitable that travel by witnesses or the use of deposition testimony will become necessary. However, the defendants have not merely shown that they will be inconvenienced by a trial in this district, but that the majority of primary witnesses are located in Mexico. *Cf. Hodson, supra*, at 822. (Holding that dismissal under forum non conveniens was inappropriate where defendants failed to show that majority of witnesses with probative testimony were in England). If this case were tried in Mexico, however, the trial court would have considerably more access to the primary witnesses in this case, as well as being more likely to assert jurisdiction over all the named defendants.

A trial of this action in the Eastern District of Virginia will also hamper the ability of the defendants to implead other parties. Defendants AmEx Co. and AmEx Travel have asserted that they may be entitled to contribution and cross claims against several of the other defendants in this action. None of these defendants, all of which reside in Mexico, have been served with process even though the action has been pending for nearly one year. It is doubtful that these defendants are amenable to process or under the jurisdiction of this Court. Consequently, defendants' inability to pursue cross claims against these defendants is another factor which favors dismissal. *See Pain v. United Technologies Corp.*, 637 F.2d 775, 790 (D.C.Cir.1980) (inability of a party to implead another party directly involved in the controversy is a factor which favors dismissal under forum non conveniens), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981); *Hodson, supra*, at 822.

The other private interest factors are resolved in a similar fashion. First, if it were deemed important for the jury to view any of the locations or objects associated with this case, there would be no practical means of transporting the jury to Mexico. Several of the defendants would also be put to considerable expense in sending counsel and expert witnesses to the scene of the accident in order to investigate. There are also many practical problems in the administration of the trial which could foreseeably arise if it were held in this district. Given the nationality of many of the defendants, it is likely that the trial court would require translators at the trial as well as the translation of various documents. Therefore, the private interest factors in *Gulf Oil* all counsel dismissal of this action.

The public interest factors articulated by *Gulf Oil* also support dismissal. First, the interest of a Mexican Court in adjudicating this matter far outweighs any interest of this forum. Although it is indisputable that Eastern District of Virginia has an interest in protecting the rights of United States citizens who travel abroad, these interests are secondary to the interests of Mexico in this action. Mexico has an interest in providing a safe haven for tourists who visit Cancun. It also has a strong interest in determining how to assess liability against any of its citizens who may be responsible for the plaintiff's injuries. The case involves many Mexican defendants and an accident in Mexico. As stated above, most of the witnesses and evidence are also in Mexico. The action therefore can be characterized as a "localized controversy" of the type the *Gulf Oil* Court stated should be decided "at home." *Gulf Oil, supra*, at 508, 67 S.Ct. at 843.

The next public interest factor this Court must examine is what law to apply. If Mexican law governs this action, then this factor must also be weighed in favor of dismissal. *See id.* To determine which law applies, this Court must apply the conflicts of law rules of Virginia. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). According to Virginia law, it is clear that the substantive law in this case will be that of the *lex loci delicti*, the law of the place of the injury. *Sutton v. Bland*, 166 Va. 132, 184 S.E. 231 (1936). Adjudication of the case in this district would therefore necessitate the interpretation and translation of Mexican law, along with the controversies surrounding such matters. Most, if not all, of these problems would be resolved if the case were brought in Mexico instead of Virginia. This factor therefore also counsels dismissal. *Gulf Oil, supra*, at 508, 67 S.Ct. at 843.

### RECOMMENDATION

Due to the factors laid out in the Report, it is RECOMMENDED that summary judgment be awarded to the defendants on the entire action before this Court. It also appears that the factors which govern the application of the doctrine of forum non conveniens all strongly support the dismissal of this case. Simply put, the Eastern District of Virginia is not an appropriate forum for this case to be heard. Alternatively, this Court also RECOMMENDS that this case should be dismissed pursuant to that doctrine.

*Directions for Mailing and
Review Procedures*

The Clerk shall mail copies of this Report and Recommendation to counsel of record. By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing recommendation within ten (10) days from the date of mailing of this report to the objecting party (*see* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b)), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specific recommendation to which objection is made.

The parties are further notified that failure to file timely objections to the recommendation set forth above will result in waiver of right to appeal from a judgment of this court based on such recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins,* 766 F.2d 841, 846 (4th Cir.1985) (quoting *Carr v. Hutto,* 737 F.2d 433, 434 (4th Cir.1984), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985)); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

Dated June 25, 1996