Herman L. COLEMAN, et ux., Plaintiff,

v.

SLADE TOWING COMPANY, et al., Defendants.

Civ. A. No. W89–0105(B).

United States District Court, S.D. Mississippi, W.D.

March 27, 1991.

C.E. Sorey II, Ramsey Andrews & Sorey, Vicksburg, Miss., J. Keith Hyde, Herschel L. Hobson, Beaumont, Tex., pro hac vice, for plaintiff.

Gail Cucancic Jenkins, Benckenstein Norvell, Bernsen & Nathan, Beaumont, Tex., pro hac vice, for Allied Chemical.

Michael C. Smith, Gary K. Jones, Silas W. McCharen, Daniel Coker Horton & Bell, Jackson, Miss., for PPG Ind., Sun Oil, Union Carbide, Texaco, Atlantic Richfield & Pure Oil, Conoco, Union Oil, Loffland Bros., Amoco Oil, Shell Oil, Phillips Petroleum, E.I. Dupont, Occidental Chem., Monsanto Co., Dow Chem., Sun Refining, Kerr–McGee, Superior Oil, Mobile Oil, Ashland Oil, Crown Central Petroleum Corp., Oxy USA Inc., Oxy Petroleum, Inc., Chevron U.S.A., Marathon Oil, and Koch Industries, Inc.

Walker L. Watters, Gerald Brand Watters Cox & Hemleben, Jackson, Miss., for Warren Petroleum.

David Magee, Biloxi, Miss., Timothy F. Burr, Galloway Johnson Tompkins & Burr, New Orleans, La., for Loffland Bros.

Shelly Gilbreath–Wells, Lawrence Abbott, Abbott Best & Meeks, New Orleans, La., pro hac vice, for Zapata Haynie Corp.

Stephen L. Thomas, Frank W. Hunger, Lake Tindall Hunger & Thackston, Greenville, Miss., for Placid Oil Co.

Warren Ashley Hines & Joel J. Henderson, Henderson Duke Dantone & Hines, Greenville, Miss., for Hollywood Marine.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the Motion of Defendants for Summary Judgment. Plaintiffs have responded to the Motion. The Court, having considered the Motion and response, together with memoranda of authorities and attachments thereto, is of the opinion that Defendants' Motion is not well taken and should therefore be denied.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Herman L. Coleman began work at the Levingston Shipyard in Orange, Texas, as a shipfitter's helper on December 6, 1955. For the first four to six years Coleman was employed at Levingston, he spent all of his time on ship repair work, including work on barges, tugboats, and other maritime vessels. Coleman's duties primarily involved cutting out damaged plates on the vessels and hinging new frames into place. In addition, as part of the overall "gas freeing" and cleaning process, Coleman was required to go down into the barge holds and "scoop out" the residue left after the areas had been hosed down with high pressure water hoses.

In 1960, Coleman was promoted to first-class fitter. In this position, his main duty was to cut out damaged patch plates and fit new ones into place. Coleman was also required to perform various other minor repair tasks, such as fixing loose ladders and replacing worn or loose signs. Because of the nature of his work, Coleman was required to work at the sight of the damage, usually within the hold of the vessel.

In 1973, Coleman was promoted to supervisor. His duties then included inspecting vessels to verify damage, gathering the necessary crew and materials to undertake repair jobs, and keeping the docks under his control clean. Coleman continued in this position until 1983, when he was laid off from the shipyard due to a decline in shipyard business.

During the entire period that Coleman worked at Levingston Shipyard, he was exposed to benzene on numerous occasions. Some of the exposures occurred on vessels while they were afloat and others occurred while the vessels were onshore in dry dock or on railways.

Following his layoff from Levingston, Coleman was employed by Conoco in West Lake, Louisiana, as a pipe fitter. As part of a ninety-day trial period when he first began working for Conoco, Coleman was required to visit the company physician, Dr. William J. Jennings for a physical examination. Dr. Jennings' report of that physical, dated December 5, 1985, stated that Coleman showed symptoms consistent with chronic lymphocytic leukemia in its early stages and that he would be restricted from working around aromatic hydrocarbons. Dr. Jennings suggested that Coleman see a medical specialist for a full examination, including a bone marrow examination. Coleman contends that Dr. Jennings did not tell him he suffered from leukemia, but admits that he was told to see a specialist. As a result of Dr. Jennings' diagnosis, Coleman was dismissed from his job with Conoco.

Following the diagnosis of Dr. Jennings, Coleman went to his family physician, Dr. George Eastman, who ran various blood tests on him. Dr. Eastman informed Coleman that he had a "blood disorder" and needed to see a specialist.

Approximately four to six months after his December, 1985 visit to Dr. Jennings, Coleman applied for a job at American Bridge and was informed that he would have to submit his medical records in order to be considered for employment. Coleman then retrieved his medical records from Dr. Jennings. According to Coleman, his review of Dr. Jennings' report at this time was the first instance he was directly aware that he suffered from leukemia.

On June 30, 1989, the present action was filed by Coleman and his wife in the Circuit Court of Warren County, Mississippi. In their Complaint, Plaintiffs contend that Coleman's leukemia was directly caused by his occupational exposure to benzene and various oil products on the vessels which Coleman repaired and maintained. On this basis, Plaintiffs asserted strict liability, negligence, and warranty actions against the then named Defendants. The case was subsequently removed to this Court on the Motion of Defendants on the basis of diversity of citizenship jurisdiction. Following removal to this Court, Plaintiffs amended the Complaint on two occasions to name additional defendants in this matter. All Defendants now move this Court for Summary Judgment, alleging that this action properly falls within the scope of general maritime law and is, therefore, barred by the maritime statute of limitations.

## II.  CONCLUSIONS OF LAW

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper merely where the court believes it unlikely that the opposing party will prevail at trial. *National Screen Service Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir. 1962).

The party moving for summary judgment bears the responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrates the absence of a genuine issue of fact.

*Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. However, the movant need not support the motion with materials that negate the opponent's claim. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to an absence of evidence to support the non-moving party's claim; the non-moving party must then designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

The primary issue before the Court on Defendants' Motion for Summary Judgment is whether this action falls within the scope of general maritime law and is therefore barred by the three year statute of limitations provided for maritime torts under 46 U.S.C.App. § 763a.

### A. Admiralty Jurisdiction

■ This Court initially notes the unique circumstances presented by the raising of admiralty issues in the instant case. As previously noted, this action was removed to this Court by Defendants on the basis of diversity of citizenship jurisdiction. Plaintiffs have never asserted admiralty jurisdiction in this matter and have cast their claims as common law, rather than maritime, torts. Nor have Plaintiffs elected to identify this matter as an admiralty proceeding as allowed under Rule 9(h) of the Federal Rules of Civil Procedure. This Court notes, however, that the choice to proceed on the basis of diversity of citizenship jurisdiction and to phrase the claims in terms of common law torts does not determine the substantive law to be applied to this case. *Butler v. American Trawler Co.*, 707 F.Supp. 29, 31 (D.C.Me.1989). Rather, where a common law action is brought to enforce a cause of action also cognizable in admiralty, the substantive law to be applied is federal maritime law. *Pope and Talbot, Inc. v. Hawn*, 346 U.S. 406, 409, 74 S.Ct. 202, 204, 98 L.Ed. 143 (1953). Thus, once the underlying cause of action has been found to constitute a maritime tort, the application of maritime law is mandated, claims of diversity jurisdiction notwithstanding. *Butler*, 707 F.Supp. at 31. Accordingly, if Plaintiffs' claims represent maritime torts that fall within the

Court's admiralty jurisdiction, the instant case will be governed by maritime law, including the maritime three year statute of limitations.

■ To determine when a given action falls within the court's admiralty jurisdiction and is subject to maritime law, the United States Supreme Court has established a two-pronged analysis. *See Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). The "situs" or locality test considers whether the tort occurred on navigable water. *Executive Jet*, 409 U.S. at 268, 93 S.Ct. at 504. The "nexus" factor considers whether the alleged wrong bears a significant relationship to traditional maritime activities. *Id.; see also Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 674–75, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982).

Admiralty jurisdiction over a tort claim requires that the claim arise on navigable waters. Under this "situs" or locality test, a tort occurs "where the alleged negligence took effect," rather than where the negligent acts or omissions occurred. *Executive Jet*, 409 U.S. at 266, 93 S.Ct. at 503. Thus, in products liability actions such as the instant case, the locality test is satisfied where the damage or injury allegedly caused by the defective product occurred on navigable waters, even though the conduct of defendant which allegedly caused the product defect occurred on land. *Woessner v. Johns–Manville Sales Corp.*, 757 F.2d 634, 638 (5th Cir.1985) (citing *Jig the Third Corp. v. Puritan Marine Ins. Underwriters Corp.*, 519 F.2d 171, 174 (5th Cir.1975); *Watz v. Zapata Off-Shore Co.*, 431 F.2d 100, 109–10 (5th Cir.1970)).

This case presents the unique issue of whether the locality test has been met where Plaintiff's injury is alleged to be the result of numerous exposures to benzene, only some of which occurred on navigable waters. Plaintiffs argue that admiralty jurisdiction is inappropriate in this case because the locality test cannot be met with regard to all potential exposures to benzene that Coleman may have suffered. Conversely, Defendants argue that, having

established that some of the exposures to benzene occurred on navigable water, admiralty jurisdiction may be asserted over all of Plaintiffs' claims.

This Court notes that the evidence produced in this matter indicates that, while Plaintiff may have worked primarily and predominantly on vessels in drydock or otherwise on land, some of the exposures to benzene did occur on navigable waters. The Court does not, however, find merit to Defendants' contention that in such "mixed exposures" situations, the presence of some exposures on navigable waters allows the Court to exercise admiralty jurisdiction over all of Plaintiff's potential claims. Upon examination of the authorities cited by Defendants in support of this proposition, the Court finds that those cases in fact hold that admiralty jurisdiction exists in mixed exposure cases only to the extent of those exposures which have occurred on navigable waters and have expressly met the locality test. *See Woessner*, 757 F.2d at 638 (holding that the locality requirement for admiralty jurisdiction was met only to the extent that the claims arose from exposures that occurred on navigable waters); *Harville v. Johns–Manville Products Corp.*, 731 F.2d 775, 783 (11th Cir. 1984) (holding that claims arising from land-based exposures to an allegedly defective product did not meet situs test for admiralty jurisdiction).[1] Accordingly, this Court finds that the situs requirement for the exercise of admiralty jurisdiction has been met only with regard to those exposures to benzene products that Coleman suffered on navigable waters.

The Court next considers whether the "nexus" requirement for admiralty jurisdiction has been met. Plaintiffs contend that a significant relationship to traditional maritime activity cannot be demonstrated in this case because the work in which Coleman was engaged at the time of injury was not traditionally performed by seamen. Specifically, Plaintiffs note *Lowe v. Ingalls Shipbuilding, Div. of Litton Systems, Inc.*, 723 F.2d 1173 (5th Cir.1984), wherein the court suggested that injuries incurred during extensive, sophisticated repair work that virtually rendered the ships under repair incapable of navigation should not be classified as maritime torts. *Lowe*, 723 F.2d at 1190. Plaintiffs also cite *Delome v. Union Barge Line Company*, 444 F.2d 225 (5th Cir.1971), wherein the court noted that plate fitting on ships was not the type of repair that could be performed in the ordinary course of the shipping industry and required the expertise of a trained crew of shipfitters, not mere seamen. *Delome*, 444 F.2d at 232–33.

■ This Court recognizes the longstanding distinction that has been drawn in admiralty cases between ship repair, which normally falls within the admiralty jurisdiction of the court, and ship construction, which traditionally has been found nonmaritime in nature. *See Lowe*, 723 F.2d at 1185. Upon examination of the record in this case, the Court concludes that the nature of the activities in which Coleman was engaged at the time of the alleged exposures to benzene are sufficiently repair-like in nature to satisfy the nexus requirement for exercising admiralty jurisdiction. This Court finds that much of the work performed by Coleman constitutes ordinary acts of ship maintenance which clearly fall within the category of repair work over which admiralty jurisdiction has traditionally been exercised. The Court further finds that any plate fitting which Coleman may have undertaken as a shipfitter does not, under the facts of this case, rise to a level of such extensive renovation that it could

---

1. The Court also notes that Defendants cited *Drake v. Raymark Industries, Inc.*, 772 F.2d 1007 (1st Cir.1985), in support of their position that some exposures on navigable waters are sufficient to confer admiralty jurisdiction over the total claim. In *Drake*, the court read the *Harville* decision as standing for the proposition that the situs requirement was met if some exposure occurred on navigable water, despite the fact that other exposures occurred on land.

*Drake*, 772 F.2d at 1015. As this Court has previously noted, however, *Harville* does not stand for that proposition and, indeed, expressly states that admiralty jurisdiction can be exercised only to the extent that the situs test has specifically been met. *See Harville*, 731 F.2d at 783. Therefore, the Court declines to follow the holding of *Drake* to the extent that the opinion misstates the holding of *Harville*.

be said to constitute ship construction. In this regard, the Court notes that the *Delome* decision which Plaintiffs have cited did not discuss the nature of shipfitting within the context of the repair/construction dichotomy, but rather discussed such activity as it related to the circumstances under which the warranty of seaworthiness should be applied to a case. This Court notes that the seaworthiness issue is not before the Court on Defendants' Motion for Summary Judgment and therefore finds that the *Delome* decision is not dispositive of the issues currently before the Court.

Finally, Plaintiffs have called this Court's attention to several asbestos cases wherein it has been held that the peculiar nature of asbestos claims do not raise the type of federal concerns that have traditionally marked the exercise of admiralty jurisdiction and such claims were therefore held to fall outside of the scope of admiralty jurisdiction. On that basis, Plaintiffs urge this Court to adopt a similar position with regard to chemical exposure injuries. The Court, however, does not find Plaintiffs' argument persuasive. In *Clay v. Union Carbide Corp.*, 828 F.2d 1103 (5th Cir. 1987), the court, without comment, acknowledged admiralty jurisdiction over claims arising from exposure to chemical vapors. *See also Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223 (5th Cir.1984) (exercising admiralty jurisdiction over chemical exposure claims). The Court also observes that most asbestos exposures occurred during construction of ships whereas most chemical exposures occur after construction. The Court therefore concludes that chemical exposure cases do not, as a general rule, pose exceptional circumstances to justify the removal of such cases from the exercise of this Court's admiralty jurisdiction.

In summary, the Court therefore finds that, as to those alleged exposures to benzene that Coleman suffered in locations other than on navigable waters, the situs

test for the exercise of admiralty jurisdiction has not been met. Accordingly, such acts do not constitute maritime torts and are not subject to the three year statute of limitations provided for maritime actions under 46 U.S.C.App. § 763a. Rather, these claims fall within the general six year statute of limitations provided under Mississippi law for tort actions.[2] The Court also finds that, as to those alleged exposures to benzene that Coleman suffered on navigable waters, the situs test for the exercise of admiralty jurisdiction has been met. The Court further finds that, as to this category of claims, the nexus test for admiralty jurisdiction has also been met. Accordingly, these claims fall within the admiralty jurisdiction of the Court and are therefore subject to the three year statute of limitations applicable to maritime torts.

### B. Statutes of Limitation

The Court now considers the applicable statutes of limitation which must be applied to the various claims raised by Plaintiffs' complaint. A cause of action in tort accrues, and the applicable statute of limitations begins to run, when there has been an invasion of the plaintiff's legally protected interests. Generally, this occurs at the time that the tortious act is committed. *DuBose v. Kansas City S.R. Co.*, 729 F.2d 1026, 1028 (5th Cir.1984). However, a different rule applies where the tortious conduct results in a latent injury which cannot be detected until long after the tortious activity has occurred. Under these circumstances, the "discovery rule" is applied, and "the plaintiff's cause of action does not accrue on the date the tortious conduct occurred, but on the date the plaintiff discovers, or reasonably should have discovered, both the injury and its cause." *Albertson*, 749 F.2d at 229 (citing *United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979)).

All parties agree that, because of the latent nature of the injury suffered by

---

2. During the 1989 general session of the Mississippi Legislature, the statute of limitations governing general tort actions was shortened from six years to three years. *See Miss.Code Ann.* § 15–1–49 (Supp.1990). However, the three

year limitations period applies only to causes of action that accrue on or after July 1, 1989. Thus, the six year statute of limitations remains applicable to this case.

Coleman, the discovery rule should be applied to this case. The issue for this Court's determination, therefore, is the date on which Coleman discovered, or reasonably should have discovered, both his injury and its cause.

Before addressing the particular facts of this case, the Court notes that a discrepancy has arisen between the deposition testimony of Coleman and the affidavit of Coleman with regard to certain facts crucial to the application of the discovery rule in this case. The law is clear that Coleman is bound by his deposition testimony in the matter presently before the Court and cannot defeat a motion for summary judgment by submitting conflicting testimony. *See Albertson,* 749 F.2d at 228; *Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir.1984).

Coleman worked for Levingston Shipyard from 1955 until 1983. He later began work for the Conoco plant in West Lake, Louisiana, where he was required to undergo a complete physical examination by the company doctor, Dr. William P. Jennings. On December 5, 1985, Dr. Jennings reported that he had diagnosed Coleman as suffering from chronic lymphocytic leukemia in its early stages. Dr. Jennings also reported that Coleman was informed that he needed to see a specialist. Coleman recalls Dr. Jennings telling him that he had a "blood discrepancy" and that he would not be able to work around "aromatic hydrocarbons." Shortly thereafter, Coleman's family physician, Dr. George Eastman, informed Coleman that he has a blood disorder and needed to see a specialist. According to Coleman, it was four to six months after his initial visit to Dr. Jennings, when he retrieved his medical records from Conoco, that he discovered he actually suffered from leukemia.

For purposes of this opinion the Court assumes without deciding that, according to Coleman's testimony, June 5, 1986, is the date on which Coleman read Dr. Jennings' report, rather than some possible date within the six month period between that date and the December 5, 1985, date the report was written. Defendants assert that, based on the foregoing facts, Coleman should have been aware of his illness and its cause at least by June 5, 1986, the latest date on which, under his testimony, he read Dr. Jennings' report. Defendants maintain that Plaintiffs' tort claims accrued on that date and, since the instant suit was not filed until June 30, 1989, this action is barred by the maritime three year statute of limitations.

This Court initially notes that, as to those claims which have already been determined to fall within the general six year statute of limitations provided under Mississippi law for tort actions, the facts of this case do not support the conclusion that Plaintiffs failed to file within the period allowed for the general tort claims asserted in the complaint. Even if the Court were to assume that the statute of limitations should have started to run on December 5, 1985, when the initial visit to Dr. Jennings occurred, it is clear that Plaintiffs were well within the six year limitations period when they filed suit on June 30, 1989. Accordingly, the Court finds that all non-maritime tort claims asserted in Plaintiffs' complaint are not barred by the six year statute of limitations.

As to the maritime claims, Defendants pose both the December 5, 1985, visit to Dr. Jennings and the June 5, 1986, reading of Dr. Jennings' report as alternative dates on which Coleman could reasonably be charged with knowledge of the cause of his leukemia. Specifically, Defendants contend that Coleman's knowledge that he could not work around or be exposed to aromatic hydrocarbons established that a reasonable awareness of the cause of the leukemia should have been present. Conversely, Plaintiffs contend that Coleman did not become specifically aware that benzene exposure could cause leukemia until some time in 1987 when he was so advised by attorneys to which he was referred by a neighbor.

The Court notes that the issue raised in this case concerning knowledge of the cause of injury illustrates the complex causal issues that may be raised in suits alleging cancer injuries. As the court in

*Maughan v. SW Servicing, Inc.,* 758 F.2d 1381 (10th Cir.1985) noted, the discovery rule should be liberally applied where issues of cancer causation are present. Accordingly, the *Maughan* court held that the statute of limitations should be tolled in such cases until plaintiffs know or should have known of facts supporting the likelihood that a specific carcinogen was the cause of the cancer and has identified the likely source of his exposure to that carcinogen. *Maughan,* 758 F.2d at 1387; *see also Dubose,* 729 F.2d at 1031 (noting that the number of possible causes of an injury that exist is a relevant factor in determining when a plaintiff should be charged with knowledge of causation). Thus, based upon the foregoing legal standard and the facts of this case, the Court concludes that Defendants have failed to establish that, as a matter of law, Plaintiffs should reasonably have been aware of both the injury to Coleman and its cause at any point in time which would bar the present action under the three year maritime statute of limitations. A genuine issue of fact remains as to the point in time at which Plaintiffs should have reasonably been aware that exposure to benzene was the cause of Coleman's injury, thus triggering the accrual of these claims. Where a statute of limitations defense requires the adjudication of disputed factual issues, summary judgment is improper. *See International Brotherhood of Electrical Workers, Local Union No. 969 v. Babcock & Wilcox,* 826 F.2d 962, 964 (10th Cir.1987); 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2734 (2d ed. 1984). Accordingly, the Court finds that Defendants' Motion for Summary Judgment is not well taken and should therefore be denied.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment is hereby denied.

SO ORDERED.