**Linda SZOLLOSY, on behalf of herself and as parent and next friend of Charles Dean Szollosy, Plaintiff,**

v.

**HYATT CORPORATION, Hyatt Britannia Corporation Ltd., Watersports Administration Inc., and Red Sail Cayman Ltd., Defendants/Third–Party Plaintiffs,**

v.

**Charles Szollosy, Third–Party Defendant.**

**No. 3:99CV870(CFD).**

United States District Court, D. Connecticut.

April 24, 2002.

Steven M. Frederick, William M. Davoren, Robert W. Chesson, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, CT, for Plaintiff.

Frederick A. Lovejoy, Lovejoy & Associates, Southport, CT, for Defendants.

Frederick M. O'Brien, Keith S. McCabe, Regnier, Taylor, Curran & Eddy, Hartford, CT, for Charles Szollosy.

### RULING ON THIRD–PARTY DEFENDANT'S MOTION TO DISMISS

DRONEY, District Judge.

The plaintiff, Linda Szollosy, filed this diversity action on behalf of her minor son, Charles Dean Szollosy, against defendants Hyatt Corporation, Hyatt Britannia Corporation Ltd., Watersports Administration, Inc., and Red Sail Cayman Ltd. ("Red Sail").[1] The plaintiff claims that the defendants are liable for negligence, strict products liability, and breach of warranty arising from a jet ski accident at the Hyatt Regency Grand Cayman Resort & Villas ("the Hyatt Regency") in the Cayman Islands, which is affiliated with the defendants. The plaintiff seeks compensatory and punitive damages, as well as attorney's fees and costs.

The defendants have filed a third-party complaint against the plaintiff's husband, Charles Szollosy, seeking contribution, indemnification, and apportionment for any liability they may incur. The defendants/third-party plaintiffs contend that Charles Szollosy was negligent in controlling and supervising his son and that his negligence caused his son's injuries.

Charles Szollosy has filed a motion to dismiss the third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. Background[2]

On September 7, 1998, plaintiff Linda Szollosy, her husband, Charles Szollosy ("Mr. Szollosy"), and their son, Charles Dean Szollosy, were registered guests at the Hyatt Regency. At noon that day, they arrived at Rum Point, a beach area affiliated with the Hyatt Regency. Charles Dean Szollosy and his father waded into the ocean near several jet skis and other vessels and recreational equipment owned by Red Sail, which were available

---

1. Hyatt Hotels Corporation was dismissed as a defendant by agreement of the parties.

2. As the defendants/third-party plaintiffs have incorporated the plaintiff's complaint by reference in their complaint, the facts of this section are taken from the plaintiff's complaint. Where the allegations in the plaintiff's complaint and third-party plaintiffs' complaint conflict, however, the Court accepts as true the allegations of the third-party complaint and draws inferences from these allegations in the light most favorable to the third-party plaintiffs. Such conflicts are noted where they exist.

for rent by guests of the Hyatt Regency. The recreational equipment appeared at that time to be "tied down, disengaged, and safe." Mr. Szollosy placed his son on one of the jet skis, which then "propelled forward at great speed" and struck a breakwater. Charles Dean Szollosy was hurled over the handlebars of the jet ski and struck the breakwater. As a result of the accident, he suffered permanent disabling injuries.

The plaintiff's complaint alleges causes of action against the defendants for common law negligence and breach of warranty, and violations of Connecticut's Product Liability Act, Conn.Gen.Stat. § 52–573m, *et seq.*

As noted above, the defendants have filed a third-party complaint against Mr. Szollosy, seeking contribution, indemnification, and apportionment. They allege various theories of liability against Mr. Szollozy: he failed to exercise due care or proper control over his son or adequately supervise him; he placed his son on the jet ski when he knew or should have known that it could have been dangerous; he failed to properly examine the jet ski; he used the jet ski without the authorization of Red Sail; and he caused the jet ski to start. The defendants/third-party plaintiffs contend that Mr. Szollosy's negligence was the direct and proximate cause of the injuries sustained by his son, and assert that if the plaintiff recovers from the defendants, Mr. Szollosy may be liable for all or part of the plaintiff's claims.

Mr. Szollosy has moved for dismissal of the third-party complaint against him on the basis that the Connecticut's parental immunity doctrine shields him from the defendants/third-party plaintiffs' claims against him. Under Connecticut law, argues Mr. Szollosy, a tortfeasor's claims of contribution, indemnification, and apportionment may not be brought against a parent because those claims first require a finding of liability against the parent, which is precluded by the doctrine. *See Crotta v. Home Depot,* 249 Conn. 634, 732 A.2d 767, 771–74 (1999).

The defendants/third-party plaintiffs contend, however, that (1) maritime law applies to the instant case, and as the application of parental immunity would conflict with maritime law, parental immunity should not be applied, or in the alternative, (2) maritime choice of law principles would look to Cayman Islands substantive law to supply the rule of decision, which also does not provide for parental immunity. The defendants/third-party plaintiffs also argue that, even if Connecticut law were to apply, parental immunity is statutorily abrogated in this case. Both the plaintiff and Mr. Szollosy dispute that maritime law applies in the instant case and maintain that Connecticut law applies and would bar the defendants/third-party plaintiffs' claims.

## II. Standard

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the third-party complaint and draws inferences from these allegations in the light most favorable to the third-party plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal is warranted only if, under any set of facts that the third-party plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to

offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683). Thus, a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994) (citations and internal quotations omitted), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994).

In its review of a motion to dismiss, the Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice" to overcome a motion to dismiss. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996).

## III. Discussion

### A. Application of Maritime Law

#### 1. Admiralty Jurisdiction

Prior to 1972, courts looked only to the location where the injury occurred in order to determine whether a court had admiralty jurisdiction over a case; if the incident giving rise to the cause of action occurred on navigable waters, admiralty jurisdiction existed. *See, e.g., Victory Carriers, Inc. v. Law*, 404 U.S. 202, 205 n. 2, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). However, in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), concerning an airplane crash in the waters of Lake Erie, the Court rejected the "purely mechanical application of the locality test," 409 U.S. at 261, 93 S.Ct. 493, and held that, in order for admiralty jurisdiction to apply, the wrong at issue "must bear a significant relationship to traditional maritime activity." 409 U.S. at 268, 93 S.Ct. 493. In *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 669, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), the Court refined this "significant relationship" inquiry, providing that it was not necessary that the vessels be engaged in *commercial* maritime activity as long as the activity or accident giving rise to the action had a potential impact upon maritime commerce. Emphasizing the need for uniformity and the fact that the collision of two pleasure boats could potentially impact maritime commerce, the Court held that, notwithstanding a lack of any direct connection to commercial activity, "the negligent operation of a vessel on navigable waters ... ha[d] a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction." *Id.* at 674–75, 102 S.Ct. 2654. The Court applied this view in *Sisson v. Ruby*, 497 U.S. 358, 360, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), where it found the exercise of admiralty jurisdiction appropriate with regard to a cause of action concerning a fire that started on board a pleasure yacht and damaged several other boats and the marina where the yacht was docked. The Court held that "the need for uniform rules of maritime conduct and liability is not limited to navigation, but extends at least to any other activities traditionally undertaken by vessels, commercial or noncommercial." *Id.* at 367, 110 S.Ct. 2892.

Seeking to clarify the test as it had developed through *Executive Jet* and *Foremost,* the Court in *Sisson* directed federal courts to engage in a two-part inquiry in determining whether admiralty jurisdiction exists. 497 U.S. at 363, 365–67, 110 S.Ct. 2892. "After *Sisson* ... a party seeking to invoke federal admiralty jurisdiction ... over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart,*

*Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). The "location" or "situs" prong of the test requires a court to determine "whether the tort occurred on navigable water or whether an injury suffered on land was caused by a vessel on navigable water" *Id.* The "connection" or "nexus" prong of the test requires a court to determine "whether the incident has 'a potentially disruptive impact on maritime commerce,' . . . and whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Id.* (citing *Sisson,* 497 U.S. at 363–65, 110 S.Ct. 2892).

 Both the plaintiff and Mr. Szollosy dispute the defendants/third-party plaintiffs' claim that this Court has admiralty jurisdiction over the instant case. First, Mr. Szollosy contends that the defendants/third-party plaintiffs may not invoke admiralty jurisdiction because neither the plaintiff nor the defendants/third-party plaintiffs have affirmatively inserted a statement in their complaints identifying the claim as an admiralty or maritime claim. However, the Court finds such a pleading requirement unnecessary. *See, e.g., Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 410–411, 74 S.Ct. 202, 98 L.Ed. 143 (1953) (holding that substantive admiralty law applies, though suit was filed in federal court under diversity jurisdiction); *Preston v. Frantz,* 11 F.3d 357, 358–59 (2d Cir.1993) ("When, as in this case, plaintiffs bring a suit based upon diversity jurisdiction, we nevertheless apply substantive

federal maritime law if we have admiralty jurisdiction."), *cert. dismissed* 512 U.S. 1279, 115 S.Ct. 31, 129 L.Ed.2d 928 (1994); *Capozziello v. Brasileiro,* 443 F.2d 1155, 1157 (2d Cir.1971) ("That the district court's diversity, rather than its admiralty, has been invoked does not change the applicable [maritime] law."); *see also* 29 Moore's Federal Practice, § 704.01[2] (Matthew Bender 3d ed. 2001) ("It is not necessary to state specifically that the claim is an admiralty or maritime claim in order to invoke admiralty jurisdiction. . . . While no specific allegation of admiralty jurisdiction is required, the allegations must invoke a theory cognizable in admiralty."). While an affirmative statement invoking admiralty jurisdiction may be necessary to obtain the special *procedural* features of admiralty jurisdiction when more than one ground for subject matter jurisdiction exists,[3] *see* Fed.R.Civ.P. 9(h); 2 Moore's Federal Practice, § 9.09[2] (Matthew Bender 3d ed.2001), no such statement is necessary to confer admiralty jurisdiction.

The plaintiff and Mr. Szollosy also dispute whether the facts alleged indicate the existence of admiralty jurisdiction under the two-part "situs" and "nexus" test. As to the "situs" prong, the plaintiff and Mr. Szollosy contend that although their son was injured on water, the wrongdoing giving rise to the incident occurred on land. The wrongdoing, they maintain, arises from the safety of the defendants/third-party plaintiffs' facilities and accommodations, as well as from certain warranties

---

**3.** Federal Rule of Civil Procedure 9(h) provides that Fed.R.Civ.P. 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims apply when a pleading or count "contain[s] a statement identifying the claim as an admiralty or maritime claim," notwithstanding that more than one ground for subject matter jurisdiction exists. Rule 14(c) provides specific rules regarding third-

party practice in maritime cases, Rule 38(e) provides that no right to a trial by jury exists, Rule 82 rejects the applicability of the venue provisions of 28 U.S.C. §§ 1391–1392, and the Supplemental Rules provide procedures for attachment, garnishment, actions in rem, possessory, petitory and partition actions, and actions for exoneration from or limitation of liability.

concerning the defendants/third-party plaintiffs' businesses. As to the "nexus" prong, the plaintiff and Mr. Szollosy argue that the incident does not have a significant relationship to traditional maritime activities and the objectives of admiralty jurisdiction. Rather, they argue that the facts of this case are similar to those in which a person is injured while diving off a dock, or while swimming at the beach. *See, e.g., McGuire v. City of New York,* 192 F.Supp. 866 (S.D.N.Y.1961). The defendants/third-party plaintiffs maintain, however, that, especially in light of the need for "uniform rules governing navigation," this Court has admiralty jurisdiction over this case as it involves a pleasure craft collision on navigable waters.[4] *Foremost,* 457 U.S. at 677, 102 S.Ct. 2654; *Sisson,* 497 U.S. at 361–67, 110 S.Ct. 2892.

■ As to the "situs" requirement, the Supreme Court has stated that a tort occurs "where the alleged negligence took effect," rather than where the negligent acts or omissions occurred. *Executive Jet,*

409 U.S. at 266, 93 S.Ct. 493; *Williams v. United States,* 711 F.2d 893, 896 (9th Cir. 1983) (relevant inquiry is where alleged negligence "took effect"); *Kelly v. United States,* 531 F.2d 1144, 1146 (2d Cir.1976) ("The mere fact that land-based acts or omissions may have contributed to the drowning in this case does not alone preclude admiralty jurisdiction."). *"Executive Jet* did not reject the traditional rule that 'where the negligent act originates on land and the damage occurs on water, the cause of action is within admiralty jurisdiction.' " *Kelly,* 531 F.2d at 1146 (citing *In re Motor Ship Pacific Carrier,* 489 F.2d 152, 157 (5th Cir.1974)). Indeed, in finding admiralty jurisdiction with regard to a jet ski collision in *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199, 206, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), the Supreme Court accorded no significance to the fact that the plaintiffs alleged that the accident was caused by the defendants' manufacture and distribution of the defective jet ski, wrongful conduct that arguably took place

---

4. Neither the plaintiff, Mr. Szollosy, nor the defendants/third-party plaintiffs raise the issue of whether admiralty jurisdiction is affected by the fact that the instant accident occurred in the territorial waters of a foreign nation—the Cayman Islands are a British protectorate. *Compare Neely v. Club Med Management Services, Inc.,* 63 F.3d 166, 178 (3d Cir.1995) (finding admiralty jurisdiction over tort occurring in the coastal waters of St. Lucia), *Afflerbach v. Cunard, Ltd.,* 14 F.Supp.2d 1260, 1263 & n. 1 (D.Wyo.1998) (assuming for purposes of opinion that court had admiralty jurisdiction over accident which occurred in Cayman Islands waters), *and Sevison v. Cruise Ship Tours, Inc.,* No. 1996–57, 1997 WL 530267, at *6 (D.Vi. Aug.15, 1997) (finding admiralty jurisdiction over tort occurring in territorial waters of St. Kitts), *with Dunham v. Hotelera Canco S.A.,* 933 F.Supp. 543 547 (E.D.Va.1996) (finding that admiralty jurisdiction was not proper where tort occurred in territorial waters of Mexico), *and Sharma v. Skaarup Ship Management Corp.,* 699 F.Supp. 440, 448 (S.D.N.Y.1988) (no federal admiralty jurisdic-

tion where tort occurred in waters of British Columbia), *aff'd,* 916 F.2d 820 (2d Cir.1990) (issue not reached), *cert. denied,* 499 U.S. 907, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991). It appears, however, that the foreign nature of the waters is relevant to the determination of the appropriate choice of law, i.e., federal maritime law, law of the Cayman Islands, or Connecticut law, rather than the determination of whether admiralty jurisdiction exists. *See Sevison,* 1997 WL 530267, at *6; Grant Gilmore and Charles L. Black, Jr., The Law of Admiralty 33 (2d ed. 1975) ("Occurrences on foreign navigable waters may also ground admiralty jurisdiction."); 1 Thomas J. Schoenbaum, Admiralty and Maritime Law 72 & n. 4 (3d ed.2001) (admiralty jurisdiction extends over foreign waters, subject to the limitations of international law); Anne M. Payne, J.D., 2 Am.Jur.2d Admiralty § 59 (1994) (same, citing cases). Accordingly, the Court concludes that admiralty jurisdiction exists here based on the discussion in the text, as well as its determination that admiralty jurisdiction is unaffected by the alleged foreign situs of the accident.

solely on land. *Yamaha,* 516 U.S. at 206, 116 S.Ct. 619 ("Because this case involves a watercraft collision on navigable waters, it falls within admiralty's domain.") (citing *Sisson,* 497 U.S. at 361–367, 110 S.Ct. 2892, and *Foremost,* 457 U.S. at 677, 102 S.Ct. 2654); *see also Coleman v. Slade Towing Co.,* 759 F.Supp. 1209, 1212 (S.D.Miss.1991) (citing *Woessner v. Johns–Manville Sales Corp.,* 757 F.2d 634, 638 (5th Cir.1985)) ("[T]he locality test is satisfied where the damage or injuries allegedly caused by the defective product occurred on navigable waters, even though the conduct of defendant which allegedly caused the product defect occurred on land."). Here, the parties do not dispute that Charles Dean Szollosy's injuries occurred on navigable waters when his jet ski collided with a breakwater.[5] Accordingly, the Court finds that the "situs", or "locality", requirement for the exercise of admiralty jurisdiction has been met in this case.

■ The Court also finds that the "nexus" requirement for the exercise of admiralty jurisdiction has been met. In addressing this part of the test, a court must determine (1) whether the incident has a "potentially disruptive impact on maritime commerce," and (2) whether the "general character" of the activity giving rise to the incident shows "a substantial relationship to traditional maritime activity." *Jerome B. Grubart, Inc.,* 513 U.S. at 534, 115 S.Ct. 1043.

■ As to the first prong of the "nexus" inquiry, it is apparent that the incident at issue had the potential for disrupting maritime commerce. A young child's allegedly untrained and unaccompanied ride of a jet ski in navigable waters clearly poses a hazard to navigation. *Cf. Foremost,* 457

U.S. at 675, 102 S.Ct. 2654 (noting "[t]he potential disruptive impact [upon maritime commerce] of a collision between boats on navigable waters"). Moreover, as the Third Circuit noted in *Yamaha,* the breakwater that Charles Dean Szollosy struck "could have been a commercial boat, or the ensuing investigation into the crash could have made commercial navigation in and around the [navigable waters] difficult." *Calhoun v. Yamaha Motor Corp.,* 216 F.3d 338, 345 (3d Cir.2000). Furthermore, the emergency medical treatment of Charles Dean Szollosy in the water also carried the potential to disrupt maritime commerce. *Cf. Kelly,* 531 F.2d at 1147–48 (finding that Coast Guard's rescue efforts following capsize of recreational sailboat evidenced incident's significant relationship to traditional maritime activities).

As to the "general character" of the activity involved, the Supreme Court has held that "[n]avigation of boats in navigable waters clearly falls within the substantial relationship; storing them at a marina on navigable waters is close enough; whereas in flying an airplane over the water, as in swimming, the relationship is too attenuated." *Jerome B. Grubart, Inc.,* 513 U.S. at 540, 115 S.Ct. 1043; *see Sisson,* 497 U.S. 358, 110 S.Ct. 2892. Several courts, including the U.S. Supreme Court, have found that jet ski collisions on navigable waters constitute activity sufficient to confer admiralty jurisdiction. *See, e.g., Yamaha,* 516 U.S. at 206, 116 S.Ct. 619; *Calhoun,* 216 F.3d at 344–45; *Waggoner v. Nags Head Water Sports, Inc.,* 141 F.3d 1162, 1998 WL 163811 (4th Cir.1998) (per curiam) (applying maritime law to jet ski accident); *Wahlstrom v. Kawasaki Heavy Industries, Ltd.,* 4 F.3d 1084, 1086–87 (2d

---

**5.** Despite some conflict between the allegations contained within the third-party complaint and those of the plaintiff's complaint—e.g. whether Mr. Szollosy caused the jet ski to start or contributed to the starting of the jet ski—both complaints state that the jet ski started and that Charles Dean was seated on the jet ski when his injuries occurred.

Cir.1993) (same); *Rosen v. Brodie*, Civ.A. 94–3501, 1995 WL 102700, at \*2 (E.D.Pa. March 9, 1995) (same).

The concern that admiralty law be uniform and predictable also supports the exercise of admiralty jurisdiction in the instant case, notwithstanding it is alleged that Charles Dean Szollosy was only on the jet ski for a brief moment before his injuries occurred and that this case involves the allision [6] of a jet ski and a stationary object rather than the collision of two vessels. "In the cases after *Executive Jet*, the Court stressed the need for a maritime connection, but found one in the navigation or berthing of pleasure boats, despite the facts that the pleasure boat activity took place near shore, where States have a strong interest in applying their own tort law, or was not on all fours with the maritime shipping and commerce that has traditionally made up the business of most maritime torts." *Jerome B. Grubart, Inc.*, 513 U.S. at 543, 115 S.Ct. 1043 (citing *Sisson*, 497 U.S. at 367, 110 S.Ct. 2892. *Foremost*, 457 U.S. at 675, 102 S.Ct. 2654). Indeed, the federal interest in protecting maritime commerce requires that "*all* operators of vessels on navigable waters are subject to uniform rules of conduct." *Foremost*, 457 U.S. at 675, 102 S.Ct. 2654; *see also Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 401–02, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) ("[F]ederal admiralty law should be a system of law coextensive with, and operating uniformly in, the whole country.") (internal quotations omitted); *Friedman v. Cunard Line Ltd.*, 996 F.Supp. 303, 309–313

(S.D.N.Y.1998) (referring to the importance of the "uniform administration of admiralty actions").

■ Accordingly, the Court finds the exercise of admiralty jurisdiction appropriate in the instant case.[7]

### 2. Choice of Law

The Court must next determine which law to apply to the third-party complaint— federal maritime law, Cayman Islands law, or Connecticut law—in order to ascertain whether, as Mr. Szollosy contends, the third-party complaint fails to state a cause of action in light of his parental immunity from a personal injury suit brought by his son. The plaintiff and Mr. Szollosy claim Connecticut state law should be applied, but the third-party plaintiffs assert that the law of the Cayman Islands should be applied.

Ordinarily, where admiralty jurisdiction exists over a tort that occurred on foreign waters, a choice of law inquiry would begin with an analysis of whether United States or foreign law would apply according to a balancing of the factors set forth in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). However, it appears that there is no conflict among the laws of the pertinent jurisdictions on the issue raised by Mr. Szollosy in his motion to dismiss. *See Miller v. Bombardier, Inc.*, 872 F.Supp. 114, 114 (S.D.N.Y.1995) ("[T]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the law of the jurisdictions in-

---

**6.** Allision means the collision of a vessel with "a fixed object, rather than another vessel." 29 Moore's Federal Practice, § 707.049[1][g] (Matthew Bender 3d ed.2001).

**7.** The Court finds that the alleged facts of either the plaintiff's complaint or the defendants/third-party plaintiffs' complaint are sufficient to confer admiralty jurisdiction upon

this Court. However, the Court does not express an opinion as to the appropriate choice of law to apply to the plaintiff's complaint, as the parties have not had an opportunity to brief this issue. Additionally, for the reasons stated below, and in the absence of a fuller factual record, the Court also declines to reach a final decision on which choice of law must be applied to the third-party complaint.

volved."). First, it does not appear that Cayman Islands law provides for parental immunity from tort liability. *See* Jones Aff. at ¶ 4. Second, it does not appear that federal maritime law provides for parental immunity from tort liability. Finally, assuming that the absence of a federal maritime rule on point would require the Court to apply Connecticut law, and accepting as true the facts contained in the third-party complaint, it appears that Connecticut law would abrogate parental immunity in the instant case. Accordingly, it appears that the outcome of the choice of law determination would not affect the outcome of the third-party defendant's motion to dismiss.

■■■ At the outset, the Court notes that, generally, "with admiralty jurisdiction, comes the application of substantive admiralty law," *East River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), but the "exercise of federal admiralty jurisdiction does not result in automatic displacement of state law." *Jerome B. Grubart, Inc.*, 513 U.S. at 545, 115 S.Ct. 1043. The U.S. Supreme Court has stated:

> "It is true that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system. But this limitation still leaves the States a wide scope." *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 373, 79 S.Ct. 468, 480–481, 3 L.Ed.2d 368 (1959) (footnote omitted). *See East River, supra*, at 864–865, 106 S.Ct., at 2298–2299 ("Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules" (footnote omitted)). Thus, the city's proposal to synchronize the jurisdictional enquiry with the test for determining the applicable substantive law would discard a fundamental feature of admiralty law, that federal admiralty

courts sometimes do apply state law. *See, e.g., American Dredging Co. v. Miller*, 510 U.S. 443, 451–452, 114 S.Ct. 981, 987, 127 L.Ed.2d 285 (1994); *see also* 1 S. Friedell, Benedict on Admiralty § 112, p. 7–49 (7th ed.1994).

*Jerome B. Grubart, Inc.*, 513 U.S. at 545–46, 115 S.Ct. 1043. Accordingly, "[a]dmiralty law, at times, looks to state law, either statutory or decisional, to supply the rule of decision where there is no admiralty rule on point." *Byrd v. Byrd*, 657 F.2d 615, 617 (4th Cir.1981) (citing *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955)). However, "a state law, even though it does not contravene an established principle of admiralty law will, nevertheless, not be applied where its adoption would impair the uniformity and simplicity which is a basic principle of the federal admiralty law, or where its application would defeat an otherwise meritorious maritime cause of action." *Byrd*, 657 F.2d at 617 (internal citations omitted); *see American Dredging Co. v. Miller*, 510 U.S. 443, 447, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (state law will yield to federal maritime law where a state remedy "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations"); *see also St. Hilaire Moye v. Henderson*, 496 F.2d 973, 980 (8th Cir.1974); *cf. Princess Cruises, Inc. v. General Electric Company*, 143 F.3d 828, 832 (4th Cir.1998) ("The uniformity is not to be sacrificed to accommodate state law is a fundamental premise of admiralty jurisdiction.").

Maritime law provides that an alleged tortfeasor may seek contribution, indemnification, or apportionment from one who may be comparatively negligent or a joint tortfeasor. *See Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 94 S.Ct.

2174, 40 L.Ed.2d 694 (1974) (recognizing the right under federal maritime law to contribution or indemnity from another tortfeasor); *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 411, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) (providing for contribution or apportionment for comparative negligence in admiralty cases). However, as noted above, a review of federal maritime law does not reveal any statutory or common law authority supporting parental immunity from tort liability. Accordingly, assuming that a *Lauritzen* analysis would require the Court to apply the law of the United States, rather than foreign law, the Court would turn to state law for a rule of decision on this issue, and then determine if application of the state law would conflict with principles of federal maritime law.

■■■■ As noted earlier, Connecticut's doctrine of parental immunity "bars an unemancipated child from suing his or her parents for personal injuries." *Crotta*, 732 A.2d at 770 (citing *Ascuitto v. Farricielli*, 244 Conn. 692, 711 A.2d 708 (Conn.1998); *Squeglia v. Squeglia*, 234 Conn. 259, 661 A.2d 1007 (1995); *Dubay v. Irish*, 207 Conn. 518, 542 A.2d 711 (1988)). "Under this doctrine a parent is not liable civilly to his child for personal injury inflicted during the child's minority...." *Crotta*, 732 A.2d at 770 (internal quotation marks

omitted). This doctrine has also been applied to bar third-party claims against the parents for apportionment, contribution, and indemnification. *See id.* However, Connecticut has abrogated parental immunity in cases involving the parent's "negligence in the operation of a[ ] ... vessel, as defined in section 15–127." Conn.Gen. Stat. § 52–572c.[8] Section 15–127 defines "vessel" as "every description of watercraft, other than a seaplane on water, used or capable of being used as a means of transportation on water." Conn.Gen.Stat. § 15–127. Additionally, "operate" is defined as "to navigate or otherwise use a vessel." *Id.* As noted above, the defendants/third-party plaintiffs allege in their complaint that Mr. Szollosy "caused the jet ski to start." Accepting this allegation as true—that Charles Dean Szollosy was injured as a result of his father's negligent operation of a vessel—Mr. Szollosy's parental immunity would be abrogated by Conn.Gen.Stat. § 52–572c. Accordingly, even assuming the *Lauritzen* choice of law principles would prescribe the application of United States law to the third-party complaint, Mr. Szollosy's actions as alleged in that complaint would prevent him from invoking Connecticut's doctrine of parental immunity.[9]

Therefore, the Court declines to dismiss the defendants/third-party plaintiffs' com-

---

8. Conn.Gen.Stat. § 52–572c provides:
 In all actions for negligence in the operation of a motor vehicle, and in all actions accruing on or after October 1, 1979, for negligence in the operation of an aircraft or vessel, as defined in section 15–127, resulting in personal injury, wrongful death or injury to property, the immunity between parent and child in such negligence action brought by a parent against his child or by or on behalf of a child against his parent is abrogated.
 Conn.Gen.Stat. § 52–572c.

9. Although there appears to be some dispute as to whether choice of law issues must al-

ways be determined before trial, *compare Marra v. Bushee*, 447 F.2d 1282, 1284 (2d Cir.1971), *and* 8 Moore's Federal Practice, § 38.34[2] (Matthew Bender 3d ed.2001), *with Chance v. E.I. Du Pont Nemours & Co.*, 57 F.R.D. 165, 167–71 (E.D.N.Y.1972), the Court does not find it appropriate to resolve at this time the factual dispute of whether Mr. Szollosy "operated" the jet ski, as there has not been sufficient evidence presented to the Court on this issue. Accordingly, as noted above, the instant decision is based on the *alleged* facts contained in the third-party complaint.

plaint on the basis of Mr. Szollosy's parental immunity from suit.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the defendants/third-party plaintiffs have sufficiently stated a claim against Mr. Szollosy for contribution, indemnification, and apportionment for negligence liability they may incur in the instant case.

The motion to dismiss [Doc. # 57] is therefore DENIED.