Linda SZOLLOSY, on behalf of herself
and as parent and next friend of
Charles Dean Szollosy, Plaintiff

v.

HYATT CORPORATION, Hyatt Britannia Corporation Ltd., Watersports Administration Inc., and Red Sail Cayman Ltd., Defendants/Third–Party Plaintiffs

v.

Charles Szollosy, Third–
Party Defendant

No. CIV.A.3:99 CV 870CFD.

United States District Court,
D. Connecticut.

Sept. 26, 2005.

---

Angelo A. Ziotas, Silver, Golub & Teitell, Robert W. Chesson, Steven M. Frederick, William M. Davoren, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, CT, for Plaintiff.

Dan E. Labelle, Halloran & Sage, Westport, CT, Frederick A. Lovejoy, Lovejoy & Associates, Easton, CT, Ben M. Krowicki, Brent L. Hoffman, Bingham McCutchen, Hartford, CT, Jeffrey L. Williams, Jorden Burt, Simsbury, CT, Peter M. Nolin, Sandak Hennessey & Greco, Stamford, CT, for Defendants.

### RULING ON MOTIONS FOR SUMMARY JUDGMENT

DRONEY, District Judge.

Plaintiff Linda Szollosy brought this action as parent and next friend of her minor son Charles "Dean" Szollosy, seeking damages for injuries suffered by Dean Szollosy during a September 1998 vacation in the Cayman Islands. Linda Szollosy's complaint contains five counts, alleging the common law torts of negligence and breach of warranty by defendants Hyatt Corporation ("Hyatt") and Hyatt Britannia Corporation Ltd. ("Hyatt Britannia"), and alleging negligence, breach of warranty, and strict products liability under Conn. Gen.Stat. § 52–572m *et seq.* against defendants Watersports Administration, Inc. ("WAI"), and Red Sail Cayman Ltd. ("Red Sail").[1] The defendants then brought a third-party action against Charles Szollosy for contribution, common law indemnification, and apportionment, alleging that Charles Szollosy was liable for all or part of Dean's injuries due to negligence.[2]

Charles Szollosy has now filed a motion for summary judgment on the defendants' third-party complaint, arguing that Connecticut law governs the defendants' action and affords Charles Szollosy parental immunity. Defendants Hyatt, Hyatt Britannia, and WAI have filed a separate motion for summary judgment as to Linda Szollosy's complaint, arguing that they are distinct legal entities that cannot be held responsible for any liability of Red Sail. Finally, Linda Szollosy has filed a motion for summary judgment on the defendants' nineteenth affirmative defense, in which the defendants claim limitation of liability under the federal admiralty statutes at 46 U.S. § 183 *et seq.*

### I. Background [3]

In September 1998, Linda, Charles, and Dean Szollosy spent a family vacation at the Hyatt Regency Grand Cayman Resort and Villas in the Cayman Islands. During their vacation, on September 7, 1998, the Szollosys took a day trip to the nearby Rum Point recreation area. Rum Point offered a swimming beach, as well as sev-

---

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

2. Charles Szollosy is the husband of Linda Szollosy and the father of Dean Szollosy.

3. The following facts are taken from the parties' Local Rule 56 statements and summary judgment papers. They are undisputed unless otherwise noted.

eral restaurants and snack bars. Defendant Red Sail also operated a concession stand at Rum Point, where sailboats, paddleboats, windsurfers, and wave runners and other equipment were available for rental.[4]

Shortly after arriving at Rum Point, Charles Szollosy waded in the water with then-four-year-old Dean over to the area where Red Sail's wave runners were moored. The two sat on one wave runner for about ten minutes without incident. Charles Szollosy then placed Dean atop a second wave runner. The parties dispute whether Charles Szollosy boarded the second wave runner or played any part in operating it. In any case, the second wave runner's engine started and the watercraft began to move with only Dean Szollosy aboard. The wave runner carried Dean across the Rum Point harbor and crashed directly into a stone jetty or break wall. Dean Szollosy was thrown over the handlebars of the wave runner as a result of the crash; he suffered injuries including coma and brain hemorrhage.

## II. Standard of Review

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genu-

ine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then summary judgment is appropriate. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991).

## III. Discussion

Each party's summary judgment motion will be evaluated in turn.

### A. Third–Party Defendant Charles Szollosy's Motion for Summary Judgment

The defendants' third-party complaint alleges that Charles Szollosy was negligent for failing to adequately supervise Dean Szollosy immediately preceding the accident, failing properly to examine the wave runners before placing Dean on them, fail-

---

4. A WaveRunner is Yamaha's trademarked brand name for its line of personal watercraft, small recreational vehicles powered by inboard engines. Personal watercraft are distinguished from boats because the rider sits astride or stands on the watercraft, rather than riding inside as in a boat. WaveRunners often are referred to generically as "jet skis," though Jet Ski is itself the brand name for Kawasaki's personal watercraft models. Because the personal watercraft at issue here is a Yamaha WaveRunner, the Court will use the term "wave runner" in describing it.

ing to exercise due care to protect Dean Szollosy, using the wave runners without proper authorization, and for either causing the second wave runner to start or contributing to its start. Charles Szollosy has moved for summary judgment on the third-party complaint. He argues that Connecticut's parental immunity doctrine shields him from the defendants'/third-party plaintiffs' claims of contribution, indemnification, and apportionment for Dean's injuries, because those claims first require a finding of liability against Charles Szollosy as parent and such a finding specifically is precluded by Connecticut's immunity doctrine.

Charles Szollosy first made this argument in his motion to dismiss the defendants' third-party complaint [Doc. # 57]. At that time, the defendants/third-party plaintiffs responded that the court should exercise its admiralty jurisdiction and apply maritime law, which has no parental immunity doctrine, to this action. Alternatively, the defendants argued that maritime choice of law principles would compel the application of Cayman Islands substantive law, which also does not recognize parental immunity. In its ruling, the Court first evaluated the action under the criteria set forth in *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), and determined that it possessed and would exercise admiralty jurisdiction over the case.[5] *See Szollosy v. Hyatt*, 208 F.Supp.2d 205 (D.Conn.2002) (Ruling on

Third–Party Defendant's Motion to Dismiss).

The Court then denied the motion to dismiss without resolving the choice of law issue, on the ground that there was no conflict among the laws of the various pertinent jurisdictions. *Id.* at 213–14. Neither federal maritime law nor Cayman Islands substantive law appeared to provide parental immunity. Further, the third-party complaint alleged that Charles Szollosy had *operated* the wave runner. Connecticut has abrogated parental immunity when the parent's negligence occurs "in the operation of a ... vessel." *See* Conn. Gen.Stat. § 52–572c. Therefore, accepting the allegations of the third-party complaint as true for the purpose of the motion to dismiss, the Court found that the outcome of the choice of law determination would not affect Charles Szollosy's inability to prevail at this stage. *See Szollosy*, 208 F.Supp.2d at 214.

Both Charles Szollosy and the defendants/third-party plaintiffs now agree that, with the fuller factual record available at the summary judgment stage, the Court should decide whether Connecticut, federal maritime, or Cayman Island law applies to the action.[6] Charles Szollosy maintains that the Court should undertake a choice-of-law analysis as established by *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and apply Connecticut law to the third-party complaint. The defendants/third-party plaintiffs again argue

---

**5.** The fact that plaintiff Linda Szollosy invoked only the Court's diversity jurisdiction does not mean that the Court cannot also exercise its admiralty powers. *See, e.g., Capozziello v. Brasileiro*, 443 F.2d 1155, 1157 (2d Cir.1971) ("That the district court's diversity, rather than its admiralty, has been invoked does not change the applicable [maritime] law."); *see also* 29 *Moore's Federal Practice* § 704.01[2] (Matthew Bender 3d ed. 2001) ("It is not necessary to state specifically that the claim is an admiralty or maritime

claim in order to invoke admiralty jurisdiction ... [so long as] the allegations ... invoke a theory cognizable in admiralty."). *See also Szollosy v. Hyatt*, 208 F.Supp.2d 205, 210–13 (D.Conn.2002) (Ruling on Third–Party Defendant's Motion to Dismiss).

**6.** As evidenced by their support for a *Lauritzen* analysis, the parties no longer dispute the Court's admiralty jurisdiction over this action.

that the Court should apply federal maritime law and consider the Connecticut rule of parental immunity preempted, or alternatively apply Cayman Islands law.

*Lauritzen,* the case which established choice-of-law principles for maritime tort claims, involved a Danish sailor's injuries in the course of his employment aboard a Danish ship. The *Lauritzen* Court evaluated whether United States law or Danish law should be applied to the tort, and established seven factors to be considered in resolving such questions: 1) the location of the wrongful act; 2) the law of the flag of the vessel involved; 3) the domicile of the injured party; 4) the national allegiance of the defendant shipowner; 5) the place of contract; 6) the relative accessibility of a foreign forum; and 7) the law of the forum chosen. *See Lauritzen,* 345 U.S. at 583–92, 73 S.Ct. 921.[7]

As evidenced by the international flavor of the *Lauritzen* case, the factors "are most often applied to determine whether the admiralty law of the United States or that of a foreign state should be applied to a particular dispute." *Calhoun v. Yamaha Motor Corp.,* 216 F.3d 338, 346 (3d Cir. 2000). The laws of the individual United States rarely are implicated in a *Lauritzen* analysis, save in purely domestic maritime torts. *See, e.g., Scott v. Eastern Air Lines, Inc.,* 399 F.2d 14 (3d Cir.1967) (applying *Lauritzen* to determine whether Massachusetts or Pennsylvania law should govern a suit stemming from a Philadel-

phia-bound plane's crash into Boston Harbor).

 Nor can the Court agree with Charles Szollosy that Connecticut law should wholly govern this action. It is well-settled that "[w]ith admiralty jurisdiction comes the application of substantive admiralty law." *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). *See also Wahlstrom v. Kawasaki Heavy Indus., Ltd.,* 4 F.3d 1084, 1087 (2d Cir. 1993) ("With [admiralty] jurisdiction ... we apply the general maritime law as developed by the courts."); *Shield v. Bayliner Marine Corp.,* 822 F.Supp. 81, 83 (D.Conn.1993) ("The fact that plaintiff relies partly on diversity jurisdiction does not affect the rule that maritime law applies."). State law may be imported in federal admiralty actions in limited circumstances, to supply a rule of decision in areas where admiralty is silent. Even in such situations, however, a state rule is pre-empted if its application would disrupt the "harmonious system" of uniform federal maritime law. *Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 373, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). Nor may a state rule be used to supplement admiralty law if so doing would "deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretive decisions of [the Supreme] Court." *Pope & Talbot v. Hawn,* 346 U.S. 406, 410, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

---

7. *Lauritzen* itself involved a case brought pursuant to the Jones Act, 46 U.S.C. § 688, which creates a right of action for "any seaman" suffering "personal injury in the course of his employment." The Supreme Court, however, elaborated in *Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 382, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), that the *Lauritzen* principles were "intended to guide courts in the application of maritime law generally."

Subsequent to *Lauritzen* and *Romero,* the Supreme Court established an eighth factor to be considered: the defendant shipowner's base of operations. *See Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 309, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). These cases sometimes are referred to collectively as the "*Lauritzen* triad." When this Court discusses the *Lauritzen* factors or a *Lauritzen* analysis, it refers to the general principles of that triad of cases.

The choice-of-law analysis in this action, therefore, must be conducted in two stages. First, the Court must determine under *Lauritzen* which national body of law (i.e., that of the United States or the Cayman Islands) should govern the action. Second, should federal maritime law be chosen, the Court further must decide whether the Connecticut rule of parental immunity serves as a supplementary rule of decision or whether it is pre-empted for reasons of maritime uniformity.

■ The *Lauritzen* test appears to support the application of federal maritime law in this case. The location of the wrongful act, the first factor to be considered, is of course the Cayman Islands. The remaining factors, however, weigh more heavily in favor of the United States. The second factor, the law of the flag of the vessel involved, is not a compelling one; this was a wave runner designed for tourist use, not a vessel registered and doing business in international waters. The third factor, the domicile of the injured party, is the United States. The fourth factor, the national allegiance of the defendant shipowner, does not favor either body of law strongly. While the owner of the wave runner was Red Sail Cayman Ltd., the defendants have sworn that Red Sail is 66% percent Cayman-owned and approximately 34% owned by entities which also own the American-based defendant Hyatt Corporation.[8] *See* Docs. # 152, 153. Red Sail appears to have allegiances to both the Cayman Islands and the United States, and therefore would not be materially prejudiced by applying the law of either nation. The fifth factor, place of contract, is not applicable here, as the parties did not contract for the use of the wave runner. Finally, the sixth and seventh factors, the relative accessibility of the foreign forum and the law of the forum chosen, weigh in favor of applying federal maritime law. The Szollosys are United States residents who would be greatly inconvenienced by litigating in the Cayman Islands, while the defendants/third-party plaintiffs are all corporations with at least some United States contacts or ownership, lessening the difficulty of pursuing a lawsuit here. Additionally, Linda Szollosy filed the original complaint in this case in federal court for the District of Connecticut; the law of this forum for an admiralty action is federal maritime law. Therefore, after evaluating the *Lauritzen* factors as a whole, the Court will apply federal maritime law to this action. *See also Neely v. Club Med Mgmt. Servs.*, 63 F.3d 166, 170–71 (3d Cir.1995) (applying United States maritime law to action seeking recovery for plaintiff's injuries while scuba diving in the course of her employment at Club Med in St. Lucia, because plaintiff was American citizen, activity at issue was not one implicating traditional maritime shipping interests, and corporate defendants had substantial contacts with the United States).

■ Next, the court must consider whether to import the parental immunity provisions of Connecticut law as a supplemental rule of decision for the third-party complaint. As discussed above, "the exercise of admiralty jurisdiction ... 'does not result in automatic displacement of state law,'" but its application may be circumscribed in the interests of maritime uniformity. *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 206, 116 S.Ct. 619, 133

8. A similar conclusion applies to the "eighth" *Lauritzen/Rhoditis* factor, the defendant shipowner's base of operations, as Red Sail's ownership and operations appear to be divided between both the relevant countries. The Szollosys further allege, though the defendants/third-party plaintiffs deny, that Red Sail is a subsidiary of defendant/third-party plaintiff WAI, which is a Delaware corporation headquartered in San Francisco.

L.Ed.2d 578 (1996) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 545, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995)). Charles Szollosy argues that Connecticut has a state interest in preserving harmony between family members and allowing Dean Szollosy an undiminished economic recovery for his injuries, both of which compel application of the Connecticut parental immunity rule. The defendants/third-party plaintiffs argue that applying the Connecticut doctrine would impede their rights under admiralty law to contribution and apportionment among joint tortfeasors.

■ In nonfatal maritime personal injury cases, state substantive liability standards generally have been superseded by federal admiralty law. *See Yamaha*, 516 U.S. at 211, 116 S.Ct. 619 (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), and *Pope & Talbot*, 346 U.S. at 409, 74 S.Ct. 202.). In such actions, "a rule of comparative negligence has long been applied with no untoward difficulties . . . ." *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 407, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975); *see also Kermarec*, 358 U.S. at 629, 79 S.Ct. 406 (finding that "Kermarec's contributory negligence was to be considered . . . in mitigation of damages."). The Supreme Court also has expressed its approval of "the well-established maritime rule allowing contributions between joint tortfeasors." *Cooper Stevedoring Co., Inc., v. Fritz Kopke, Inc.*, 417 U.S. 106, 113, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974).

At the same time, the Supreme Court has warned against "the judicial creation of admiralty rules" in areas traditionally confined to state control. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 316, 75 S.Ct. 368, 99 L.Ed. 337 (1955). The Court of Appeals for the Second Circuit has construed *Wilburn Boat* to hold that "state law could be applied in the absence of a controlling federal statute or rule," especially when the law stems from an area that states have a strong interest in regulating. *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 414 (2d Cir.1990). Similarly, the Fourth Circuit has commented that "[t]here may, of course, be questions which, while arising in the context of an admiralty case, are so evidently local in nature and impact that a state's local interest clearly outweighs the federal interest in national uniformity." *Byrd v. Byrd*, 657 F.2d 615, 618 (4th Cir.1981).

■ It is also true that the federal courts generally consider state law paramount in the area of domestic relations and that states have a particular interest in regulating family relationships. *See, e.g., United States v. Morrison*, 529 U.S. 598, 615, 617, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) (calling family law one of the "areas of traditional state regulation" and counseling that "the Constitution requires a distinction between what is truly national and what is truly local."); *United States v. Lopez*, 514 U.S. 549, 564, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (categorizing family law as an area "where States historically have been sovereign"); *Ankenbrandt v. Richards*, 504 U.S. 689, 692–94, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (discussing the history of the domestic relations exception to federal diversity jurisdiction); *In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890) (holding that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."). The Connecticut Supreme Court has stated its rationale for parental immunity in similar terms, underscoring the state's special interest in protecting "the relationship be-

tween the parent and the child," which enables such relationships to flourish "without undue interference." *Crotta v. Home Depot, Inc.,* 249 Conn. 634, 643, 732 A.2d 767 (1999); *see also Ascuitto v. Farricielli,* 244 Conn. 692, 697, 711 A.2d 708 (1998) ("The peace of society … and a sound public policy … forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The State and society are vitally interested in the integrity and unity of the family and in the preservation of the family relation.") (quoting *Mesite v. Kirchenstein,* 109 Conn. 77, 84, 145 A. 753 (1929)).

In *Byrd v. Byrd,* 657 F.2d 615 (4th Cir.1981), the Fourth Circuit confronted a similar conflict between admiralty law and state family law. Elsie Byrd and her husband William were sailing on William's pleasure boat when Elsie's deck chair fell from the boat's flying bridge deck. Elsie then sued William in admiralty in the Eastern District of Virginia, claiming that her injuries resulted from her husband's negligence in either failing to permanently affix the deck chair or to erect guard rails around the flying bridge. William Boyd admitted the court's admiralty jurisdiction, but raised the Virginia doctrine of interspousal immunity as both an affirmative defense and a ground for dismissal. The Virginia district court agreed that state law controlled, and dismissed Elsie Byrd's complaint. *Byrd,* 657 F.2d at 616.

Upon review, the Fourth Circuit reversed the lower court's decision. The *Byrd* court based its decision upon an examination of the state of interspousal immunity across the United States:

Whereas at one time interspousal immunity in tort actions was, without significant exception, the law of all the states, presently, in whole or in part, thirty-two

states have abrogated the doctrine.… Moreover, in those states where the doctrine has been abrogated, even greater disunity exists. Some states have abolished the doctrine entirely. Others have abolished it only in cases of intentional torts. Still others have abolished it only in cases arising out of automobile accidents, or only in cases of outrageous, intentional torts, or some other class of cases.

*Id.* at 618.

The *Byrd* court further found that "reference to state law in deciding maritime tort suits between a husband and wife will not lead to uniform decisions" and would too greatly impair the simplicity of federal admiralty law. *Id.* Additionally, given that the negligent operation of a boat creates a right of recovery in all persons injured by the negligence, to apply a state rule of interspousal immunity potentially would deprive a person of "substantial admiralty rights" in violation of *Pope & Talbot* and its progeny. *Id.* With these findings, the Fourth Circuit concluded that it would "be anomalous and, within the foreseeable future, creative of less rather than more harmony between state and federal law, to establish the doctrine of interspousal immunity as a living organism of the admiralty law at a time when the trend in the states is towards its abolition." *Id.* at 621. The Virginia law was deemed preempted and the case remanded for further proceedings.

■ The Court finds that a similar conclusion is warranted in this matter. Just as in *Byrd*'s examination of interspousal immunity, a national examination of parental immunity finds that doctrine edging toward disrepute. Parental immunity was not present in the English common law. Rather, it first appeared in the 1891 case *Hewellette v. George,* 68 Miss. 703, 9 So. 885, in which the Mississippi Supreme

Court declared that parental immunity was necessary for the "peace of society." After *Hewellette,* many states followed suit in adopting some form of parental immunity. Several jurisdictions, however, never adopted it, including Hawaii, South Dakota, Utah, and Vermont. Still others subsequently abolished the doctrine: California, Florida, Illinois, Iowa, Kansas, Kentucky, Maine, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New York, Ohio, Oregon, Pennsylvania, South Carolina, and Wisconsin. *See Gibson v. Gibson,* 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648 (1971); *Ard v. Ard,* 395 So.2d 586 (Fla.App. 1st Dist.1981), *aff'd in part,* 414 So.2d 1066 (Fla.1982); *Larson v. Buschkamp,* 105 Ill. App.3d 965, 61 Ill.Dec. 732, 435 N.E.2d 221 (1982); *Turner v. Turner,* 304 N.W.2d 786 (Iowa 1981); *Nocktonick v. Nocktonick,* 227 Kan. 758, 611 P.2d 135 (1980); *Rigdon v. Rigdon,* 465 S.W.2d 921 (Ky. 1970); *Black v. Solmitz,* 409 A.2d 634 (Me. 1979); *Sweeney v. Sweeney,* 402 Mich. 234, 262 N.W.2d 625 (1978); *Anderson v. Stream,* 295 N.W.2d 595 (Minn.1980); *Rupert v. Stienne,* 90 Nev. 397, 528 P.2d 1013 (1974); *Briere v. Briere,* 107 N.H. 432, 224 A.2d 588 (1966); *France v. A.P.A. Transport Corp.,* 56 N.J. 500, 267 A.2d 490 (1970); *Gelbman v. Gelbman,* 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969); *Kirchner v. Crystal,* 15 Ohio St.3d 326, 474 N.E.2d 275 (1984); *Winn v. Gilroy,* 296 Or. 718, 681 P.2d 776 (1984); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971); *Elam v. Elam,* 275 S.C. 132, 268 S.E.2d 109 (1980); *Goller v. White,* 20 Wis.2d 402, 122 N.W.2d 193 (1963). And still others have retained parental immunity in some situations, but abrogated it in others. *See generally* 59 Am.Jur.2d *Parent and Child* § 111 (2005); *see also Frye v. Frye,* 305 Md. 542, 568–87, 505 A.2d 826

(1986) (appendix discussing how each of the 50 states treats parental immunity, and noting that 26 states and the District of Columbia have abrogated parent-child immunity in part). Furthermore, the Restatement (Second) of Torts now provides that "a parent or child is not immune from tort liability to the other solely by reason of that relationship." *See* Restatement at § 895G(1).

In Connecticut, parental immunity was first adopted in *Mesite v. Kirchenstein,* 109 Conn. 77, 145 A. 753 (1929). The scope of the doctrine since has been limited by both the courts and the legislature. The Connecticut General Assembly statutorily has abrogated immunity with respect to a parent's negligent operation of motor vehicles, aircraft, or vessels, and the Connecticut Supreme Court has judicially abrogated it in two instances: when the alleged negligence stems from a parent's business activities conducted outside the home, or when a parent is sued for sexual abuse, sexual exploitation, or sexual assault. *See* Conn. Gen.Stat. § 52–572c; *Dzenutis v. Dzenutis,* 200 Conn. 290, 512 A.2d 130 (1986) (establishing business activities exception); *Henderson v. Woolley,* 230 Conn. 472, 644 A.2d 1303 (1994) (establishing sexual abuse exception).

Considering this background, the historical trend across the United States is against unfettered parental immunity. Moreover, parental immunity is treated quite differently across the 50 states. Even looking wholly intrastate, Connecticut takes different approaches to parental immunity depending on the nature of the tort alleged.[9] The Court must agree with the *Byrd* court that importing state law rules on parental immunity to federal admiralty actions would detract from the uniformity of admiralty law, undermine the

---

**9.** Indeed, if Charles Szollosy's alleged negligence included operating the second wave runner, he would no longer enjoy any immunity under Connecticut law.

simplicity of the admiralty system, and too greatly impair admiralty's rule of contribution among joint tortfeasors. Therefore, in its application of federal admiralty law to this action, the Court will not import Connecticut's rules of decision on parental immunity. The Court denies Charles Szollosy's motion for summary judgment on the third-party complaint.

## B. Defendants Hyatt, Hyatt Britannia, and WAI's Motion for Summary Judgment

Defendants Hyatt, Hyatt Britannia, and WAI have moved for summary judgment on Linda Szollosy's complaint against them, arguing that they can not be liable for any injuries caused by the defendant Red Sail. Hyatt and Hyatt Brittania claim that they do not share any employees, duties, or responsibilities with Red Sail. WAI admits that it provides advertising and reservation services for Red Sail, but claims that it has no other supervision or control over that company. Linda Szollosy argues in response that she has presented evidence showing that all the defendants are interrelated; that Hyatt, Hyatt Britannia, and WAI shared responsibility with Red Sail in setting the standards under which the Red Sail Rum Point concession was operated; and that Hyatt, Hyatt Britannia, and WAI each made various representations that the Hyatt Regency Grand Cayman and its affiliated watersports facilities were safe for families with young children.

■ Upon review, the Court finds that genuine disputes of material fact exist, including the precise nature of the various defendants' corporate relationship with and control over Red Sail and its rental operation at Rum Point. Therefore, the Court denies the motion for summary judgment and leaves Linda Szollosy's claims against Hyatt, Hyatt Britannia, and WAI for resolution by the trier of fact.

## C. Linda Szollosy's Motion for Summary Judgment Re: Limitation of Liability

Finally, Linda Szollosy has moved for summary judgment as to the defendants' nineteenth affirmative defense to her complaint, in which the defendants argue that even if they were to be found liable for causing Dean Szollosy's injuries, they may invoke the protections of the Limitation of Liability Act of 1851, 46 U.S.C.App. § 181 *et seq.* That statute "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001). Linda Szollosy argues that the defendants Hyatt, Hyatt Britannia, and WAI possessed no ownership interest in the wave runner aboard which Dean Szollosy was injured and therefore have no rights under the Limitation of Liability Act. She further argues that defendant Red Sail cannot seek limitation of liability because Dean Szollosy's injuries were within its privity or knowledge.

■ The Court finds that defendants Hyatt, Hyatt Britannia, and WAI cannot invoke the protections of the Limitation of Liability Act. It is undisputed that the wave runner at issue here was owned solely by defendant Red Sail. Indeed, these three defendants initially filed no opposition papers to the summary judgment motion, nor did they appear before the Court to argue this motion on April 22, 2004. Only on May 11, 2004 did the non-Red Sail defendants submit a "supplemental memorandum" relating to Linda Szollosy's motion. *See* Doc. # 187. In that document, Hyatt, Hyatt Britannia, and WAI argued

that since Linda Szollosy elsewhere has asserted that they own or control Red Sail, such putative ownership or control allows them to seek relief under the Limitation of Liability Act. In response to the defendants' supplemental memorandum, Linda Szollosy maintains that her allegations relate only to Hyatt, Hyatt Britannia, and WAI's control over the "policies and 'standards' concerning the operation of the Red Sail concession at Rum Point." She does not seek to hold them liable as owners of the wave runner, nor as the entities responsible for the maintenance or operation of Red Sail's wave runners. *See* Doc. # 189 at 3.

The Court agrees with Linda Szollosy's characterization of her allegations against the non-Red Sail defendants. The Court also notes that the Second Circuit has suggested that limitation of liability is available only to those parties who "had actual title or [were] capable of exercising some measure of dominion or control over the vessel at the time of the accident." *Marine Recreational Opportunities v. Berman,* 15 F.3d 270, 271 (2d Cir.1994). As the non-Red Sail defendants do not claim that they held actual title to the wave runner, nor that they had dominion or control over the equipment at the time of the accident, the Court does not consider them "owners" under the Limitation of Liability Act. Therefore, the Court grants summary judgment for Linda Szollosy on the defendants' nineteenth affirmative defense as to defendants Hyatt, Hyatt Britannia, and WAI.[10]

 Linda Szollosy's argument for summary judgment as to defendant Red Sail rests on the Limitation of Liability Act's language that vessel owners enjoy limited liability only for injuries that are occasioned "without the owner's privity or knowledge." *Lewis,* 531 U.S. at 446, 121 S.Ct. 993. "Privity and knowledge under the statute 'have been construed to mean that a shipowner knew or should have known that a certain condition existed.'" *Potomac Transport, Inc. v. Ogden Marine, Inc.,* 909 F.2d 42, 46 (2d Cir.1990) (quoting *Hellenic Lines, Ltd. v. Prudential Lines, Inc.,* 730 F.2d 159, 166 (4th Cir.1984)). In the case of a corporate shipowner, the privity or knowledge of a managing agent, officer, or supervising employee of the vessel may be imputed to the corporate owner. *Id.* Nor may privity or knowledge be equated with actual knowledge or direct causation. "All that is needed to deny limitation is that the shipowner, 'by prior action or inaction set[s] into motion a chain of circumstances which may be a contributing cause even though not the immediate or proximate cause of a casualty ....'" *In re Oil Spill by the Amoco Cadiz,* 954 F.2d 1279, 1303 (7th Cir.1992) (quoting *Tug Ocean Prince, Inc. v. United States,* 584 F.2d 1151, 1158 (2d Cir.1978), *cert. denied,* 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 772 (1979)).

Linda Szollosy claims that Red Sail's decision to moor its wave runners with their fuel cocks in the "on" position and with the lock plates plugged in, in contravention of the warnings in Yamaha's owners' manuals for the wave runners, creates sufficient privity or knowledge to defeat the limitation of liability defense. While Red Sail has not explicitly admitted that the wave runners were stored negligently, it has conceded that its "beach personnel

10. Linda Szollosy also argues in her reply to the supplemental memorandum that the non-Red Sail defendants have failed to meet their burden under the affirmative defense of showing that the accident here was outside their privity or knowledge. As the Court has already found sufficient ground to award her summary judgment against those defendants on the affirmative defense, it declines to consider this second argument.

at Rum Point ... did not follow the instructions contained in the Yamaha Owner's Manual, and ... allowed the third-party defendant Charles Szollosy to remain on one of its jet skis even after having asked him to get off." *See* Doc. #165 at 11–14. Nonetheless, Red Sail argues that any inactions of its staff should not be imputed to the defendant.

■ The Court finds that Red Sail's admission that its personnel failed to abide by the Yamaha safety procedures is sufficient to establish "inaction" within its "privity or knowledge" for purposes of defeating the limitation of liability defense. Furthermore, Red Sail can not limit its liability by attributing any relevant action or inaction solely to lower-level employees. "The failure of a ship's master to exercise diligence in selecting, training, or supervising crew members whose navigational faults contribute to an accident is proper ground to deny limitation of liability." *Potomac Transport,* 909 F.2d at 46. Red Sail argues that it was diligent in training its employees because it provided each with a copy of the Yamaha owner's manual and instructed them not to let any person board a wave runner who had not completed a waiver of liability agreement and been instructed in the vessel's proper use. In its own motion papers, however, Red Sail admitted that its employees did not comply with that training. Red Sail also admitted that, prior to Dean Szollosy's accident, no manager advised Rum Point employees to remove the lock plates when wave runners were not in use. Considered collectively, Red Sail's procedures in mooring and monitoring the wave runners "set into motion a chain of circumstances which may be a contributing cause" of Dean Szollosy's injuries.[11] See *Amoco Cadiz,* 954 F.2d at 1303. For that reason, the Court finds that defendant Red Sail may not limit its liability under 46 U.S.C.App. § 181 *et seq.,* and grants Linda Szollosy's motion for summary judgment on that defendant's nineteenth affirmative defense.

## IV. Conclusion

The Third–Party Defendant's Motion for Summary Judgment [Doc. #147] is DENIED. The Defendants' Motion for Summary Judgment [Doc. #150] is DENIED. The Plaintiff's Motion for Summary Judgment Re: Limitation of Liability [Doc. #155] is GRANTED.

---

11. The Court expresses no opinion as to the plaintiff's allegations that Red Sail was negligent, nor to whether Red Sail's actions were the immediate or proximate cause of Dean Szollosy's injuries.